# IN THE SUPREME COURT OF IOWA

No. 28 / 04-1893

Filed May 12, 2006

**CLINTON PHYSICAL THERAPY SERVICES, P.C.,**

Appellant,

vs.

**JOHN DEERE HEALTH CARE, INC. and
JOHN DEERE HEALTH PLAN, INC., f/k/a
HERITAGE NATIONAL HEALTH PLAN, INC.,**

Appellees.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

Appeal from denial of motion for new trial on grounds of inconsistent special verdicts. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Jeffrey D. Martens of Bozeman, Neighbour, Patton & Noe, LLP, Moline, Illinois, for appellees.

**CADY, Justice.**

In this appeal from a judgment entered by the district court following a jury verdict in a breach-of-contract action, we must primarily consider the parameters within which the district court may resolve and correct inconsistencies in a verdict and reform the jury's answers to questions in the verdict in lieu of granting a new trial. We conclude the district court erred in failing to grant a new trial in this case. We reverse and remand for a new trial on all issues.

## I.  Background Facts and Proceedings

Clinton Physical Therapy Services, P.C. (CPT) is an Iowa corporation with its principal place of business in Clinton. It also has offices in DeWitt and Davenport, Iowa and Morrison and Savanna, Illinois. On April 15, 1996, CPT entered into a contract with John Deere Health Care, Inc. (John Deere), a health maintenance organization, to be a "network provider" of physical therapy services to John Deere plan members. The Davenport office was not in existence at the time the contract was executed, and the agreement was silent on which of CPT's offices were covered by the agreement.

The Davenport office, also called the Plaza office, opened in August 1997. CPT notified John Deere of the new Davenport office by letter on August 11 and indicated it wanted the office to be covered by the network-provider contract. John Deere initially paid for services provided at the Davenport office, but claimed it did not realize the payments were for services performed at the office at the time the payments were made. It later took the position that the office was not a covered facility under the contract, and denied claims for services performed at the Davenport office.

John Deere sent CPT letters on April 23 and June 1, 1999 stating the Davenport office was not covered by the contract. Nevertheless, CPT continued to provide services to John Deere plan members at the Davenport office. Ultimately, CPT provided services to approximately 300 John Deere plan members over 2775 visits at the Davenport office without reimbursement from John Deere at the $50-per-visit rate under the contract. This amounted to $138,750 in unpaid services up to August 2001. Of this amount, $128,200 in services were rendered after John Deere notified CPT in writing that services at the Davenport office would not be paid. In August 2001, the parties entered into a new contract. The new contract contained a specific clause indicating that John Deere had discretion to pay for services provided by CPT at a new office location.

In February 2003, CPT brought a breach-of-contract action against John Deere. CPT claimed John Deere breached the 1996 contract by refusing to pay for services provided to John Deere plan members at the Davenport office. John Deere claimed the Davenport office was not covered by the contract. It also claimed that even if it was covered, CPT failed to mitigate its damages by continuing to treat John Deere plan members at the Davenport office after receiving notice from John Deere that the services would not be reimbursed, and not billing the plan members for the services.[1]

---

[1]The failure-to-mitigate-damages issue appears to be based on *Restatement (Second) of Contracts* section 350. Comment *b* to this section provides:

> As a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts. Once a party has reason to know that performance by the other party will not be forthcoming, he is ordinarily expected to stop his own performance to avoid further expenditure. . . . The amount of loss that he could reasonably have avoided by stopping performance . . . is simply subtracted from the amount that would otherwise have been recoverable as damages.

The case was tried to a jury. At trial, CPT offered the 2001 contract into evidence as an aid to interpret the 1996 contract. John Deere claimed the clause pertaining to new locations in the 2001 contract was in the nature of a subsequent remedial measure and was not relevant. The district court excluded the contract from the evidence. The case was submitted to the jury on a verdict form that required the jury to answer a series of questions and determine the amount of damages in the event a breach of contract was established. The form provided:

> We find the following verdict on the questions submitted to us:
>
> Question No. 1: Did the terms of the contract allow for the Plaintiff to add its new Plaza or North Scott location by providing written notification to Defendants of the opening of that office?
>
> Answer "yes" or "no."
>
> ANSWER: _____
>
> (If your answer is "no," do not answer any further questions)
>
> Question No. 2: Did the Plaintiff comply with all the terms of the contract that were required unless excused?
>
> Answer "yes" or "no."
>
> ANSWER: _____
>
> (If your answer is "no," do not answer any further questions)
>
> Question No. 3: Did the Defendant breach its contract with Plaintiff?

Restatement (Second) of Contracts § 350 cmt. *b*, at 127 (1981). Clinton does not challenge the application of this defense, and we do not express an opinion as to its applicability.

ANSWER: _____

(If your answer is "no," do not answer any further questions)

Question No. 4: Did the Plaintiff fail to mitigate its damages?

Answer "yes" or "no."

ANSWER: _____

Question No. 5: State the amount of damages sustained by the Plaintiff as to each of the following items of damages:

A. The reasonable value, at the contracted rate, of outstanding charges for treatment provided by Plaintiff in its Plaza facility to Defendants' eligible members from 1997 through July 31, 2001.

$ _____

B. The reasonable value of Plaintiff's lost profits from the loss of referrals of Defendants' members to its Plaza facility from 1997 through July 31, 2001.

$ _____

Question No. 6: State the amount of damages which Plaintiff failed to mitigate.

$ _____

Question No. 7: State the total amount of recoverable damages to the Plaintiff. (The total of the answer to Question 6 minus the total of the answer to Question 7).[2]

$ _____

The parties consented to a sealed verdict, which permitted the jury to be discharged after reaching the verdict without reporting its findings in open court in the presence of the parties. *See* Iowa R. Civ. P. 1.931(3) ("When, by consent of the parties and the court, the jury has been

_____

[2]The parenthetical instruction in question 7 contained a mistake and was intended to tell the jury the answer to question 7 was the difference of question 5 (subparts A and B) minus question 6 (not question 6 minus question 7).

permitted to seal its findings and separates before it is rendered, such sealing is equivalent to a rendition and a recording thereof in open court, and such jury shall not be polled or permitted to disagree with respect thereto.").

After a period of deliberations, the jury notified the judge that it had reached a verdict. The judge discharged the jury without notifying the attorneys for the parties. In response to the first three questions in the verdict, the jury found that the network-provider contract did allow CPT to add the Davenport office, that CPT complied with all the terms of the contract, and that John Deere breached the contract. In response to question 4, the jury found that CPT did *not* fail to mitigate its damages. It then found CPT suffered $138,750 in damages in response to question 5, subpart A. These damages were defined as the reasonable value of the service provided to John Deere members at the Davenport office from August 1997 through July 2001. However, question 6 required the jury to state the amount of damages CPT failed to mitigate. The jury answered $128,200. Finally, the jury found the total amount of damages CPT could recover was $10,550. The district court entered a judgment for $10,550 in favor of CPT.

CPT subsequently filed a motion for a new trial. It claimed the verdict was inconsistent because the answers showed the jury found it did not fail to mitigate damages yet found its damages should be reduced by $128,200. It claimed this inconsistency warranted a new trial under Iowa Rule of Civil Procedure 1.1004(5). CPT also asserted that a new trial was warranted because the district court erred in failing to admit the 2001 contract into evidence.

John Deere resisted the motion for new trial. It argued CPT waived its right to a new trial by agreeing to a sealed verdict and failing to move

for resubmission of the case before the jury was discharged. Alternatively, John Deere argued the verdict was not so logically inconsistent that it could not be harmonized.

John Deere claimed that a reasonable explanation existed for the inconsistent answers based on the changes in the damage figures made by the jury on the verdict form. The verdict form revealed the jury originally inserted $10,550 for the total amount of damages sustained by CPT (value of services provided from 1997 to 2001) in response to question 5, subpart A. It also originally inserted zero in response to the request in question 6 to state the amount of damages CPT failed to mitigate. Thus, up to this point, the verdict answers were not inconsistent, and John Deere theorized that the jury had decided that CPT's damages were limited to reimbursement for services it provided prior to the time John Deere notified CPT in 1999 that it would not provide reimbursement. Question 7 then informed the jury to determine the "total amount of recoverable damages" by subtracting the amount of damages CPT failed to mitigate from CPT's total damages (reasonable value of services provided from 1997 to 2001). At this point, John Deere surmises that the jury understood it needed to show its math by subtracting the amount of damages CPT failed to mitigate from the total value of the unreimbursed services rendered over the course of the contract. John Deere believed the jury went back to questions 5 and 6 to show its math, but neglected to return to question 4 to change its answer to "yes," consistent with the procedure required under the instructions to reach the recoverable amount of damages.

The district court determined that CPT did not waive the inconsistency issue by failing to object before the jury was discharged. However, the court denied the motion for new trial on its merits. The

court accepted John Deere's explanation that the jury intended for its answers to be consistent. The court then reformed the jury's answer to question 4 ("Did the Plaintiff fail to mitigate its damages?") to "yes" to conform to the remainder of the verdict, and concluded that "[t]he jury's determinations were not inconsistent and the verdict effectuate[d] substantial justice between the parties."

CPT appealed. It claimed the district court erred by failing to grant a new trial based on the inconsistent answers in the verdict. We transferred the case to the court of appeals. The court of appeals affirmed, reasoning that while the jury's answers to questions four and six were "facially . . . inconsistent," the jury must have intended to find that CPT failed to mitigate its damages because it reduced the total damages by $128,200—the amount of damages CPT sustained after John Deere's April 1999 notice that the Davenport office was not covered under the contract. It also found the district court did not abuse its discretion in failing to admit the 2001 contract into evidence. CPT applied for further review, which we granted.

## II.    Standard of Review

" 'The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion.' " *Richards v. Anderson Erickson Dairy Co.*, 699 N.W.2d 676, 678 (Iowa 2005) (quoting *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001)). If the motion for a new trial was " 'based on a discretionary ground, we review it for an abuse of discretion.' " *Id.* (quoting *Roling v. Daily*, 596 N.W.2d 72, 76 (Iowa 1999)). In contrast, if the motion was " 'based on a legal question, our review is on error.' " *Id.* (quoting *Roling*, 596 N.W.2d at 76).

In this case, the underlying ground for the motion for new trial was based on a claim of inconsistent answers in the verdict. Generally, the trial court has some discretion when faced with inconsistent answers in a verdict. *See Dutcher v. Lewis*, 221 N.W.2d 755, 762 (Iowa 1974) ("The trial court has three alternatives where the answers are consistent with each other but inconsistent with the general verdict: (1) order judgment appropriate to the answers notwithstanding the verdict; (2) order a new trial; or (3) send the jury back for further deliberations. Ordinarily, it is discretionary with the court as to which of these alternatives to choose."). However, the question whether a verdict is inconsistent so as to give rise to the exercise of that discretion is a question of law. *See Redmond v. Socha*, 837 N.E.2d 883, 895 (Ill. 2005) ("[W]hether two verdicts are legally inconsistent is a question of law."); *State v. Leake*, 699 N.W.2d 312, 325 (Minn.) ("The question of whether verdicts are legally inconsistent is a question of law . . . ." (Citation omitted.)), *cert. denied*, ___ U.S. ___, 126 S. Ct. 745, 163 L. Ed. 2d 583 (2005); *accord State v. Harris*, 983 P.2d 881, 884 (Mont. 1999); *State v. Thompson*, 971 P.2d 879, 891 (Or. 1999). Therefore, we review the district court's conclusion as to whether answers are inconsistent for correction of errors at law. *See Richards*, 699 N.W.2d at 678 (stating when a motion for a new trial " 'is based on a legal question, our review is on error' " (quoting *Roling*, 596 N.W.2d at 76)). We generally review the admission of evidence at trial for an abuse of discretion. *State v. Price*, 692 N.W.2d 1, 3 (Iowa 2005) (citing *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003)).

### III.  Verdict

We first address the argument by John Deere that CPT waived its right to seek a new trial based on inconsistent answers in the verdict by consenting to a sealed verdict. When parties agree to a sealed verdict,

they lose their right to have a verdict returned in open court where inquiry can be made into its findings. *See* Iowa R. Civ. P. 1.931. Consequently, it is not possible to use additional deliberations as a remedy for an inconsistency in a verdict when a sealed verdict is used in a case. However, further deliberation to remedy an inconsistency in the verdict is only one available remedy. The other remedies are to grant a new trial or attempt to reconcile the inconsistencies. *Id.* r. 1.934. Thus, a sealed verdict may constitute a waiver of the additional-deliberations option, but it would not constitute a waiver of other remedies. CPT did not waive its right to request a new trial by agreeing to a sealed verdict. Thus, we proceed to consider the merits of the claim.

Jury verdicts in Iowa can be in the form of a general verdict, special verdict, or general verdict with special interrogatories. *See* Iowa Rs. Civ. P. 1.932-.934. A general verdict is a verdict in which the jury only makes a finding in favor of one party over the other party. *See Black's Law Dictionary* 1555 (7th ed. 1999) (defining "general verdict" as "[a] verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions"). A special verdict consists entirely of questions that elicit special written answers to resolve the material issues of fact in the case, and the court then enters judgment based on the findings made by the jury. *Pexa v. Auto Owners Ins. Co.,* 686 N.W.2d 150, 160 (Iowa 2004); *see Black's Law Dictionary* 1555 (defining "special verdict" as "[a] verdict that gives a written finding on each issue, leaving the application of law to the judge"); *see also McConnell v. ALCOA,* 367 N.W.2d 245, 246 n.1 (Iowa 1985) (distinguishing between special verdicts and special interrogatories accompanying general verdicts). The answers by the jury become special written findings of fact. *McConnell,* 367 N.W.2d at 246 n.1. No general

verdict is entered by the jury, and the jury does not consider the effect of its special findings. *See Pexa,* 686 N.W.2d at 161 (stating that when special verdicts are submitted, " 'it is wholly unnecessary and is generally improper for the jury to be concerned with the effect of its special findings' " (quoting *Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985))). Instead, the court enters judgment by applying the law to the findings. *Id.* at 160; *Black's Law Dictionary* 1555. A special verdict is normally used in cases involving complicated legal principles to help simplify the resolution of the case and to force the jury to focus on the important issues in the case. *Poyzer,* 360 N.W.2d at 753.

A general verdict may be supplemented with written interrogatories that cover certain issues of fact upon which the verdict is based. Iowa R. Civ. P. 1.934. These are called "special interrogatories." *Black's Law Dictionary* 825; *see also McConnell,* 367 N.W.2d at 246 ("In order to avoid confusion, a special verdict should not be called an interrogatory."). Like a special verdict, special interrogatories help to focus the jury on the important issues in the case that bear upon the general verdict the jury must reach. *See Willametz v. Guida-Seibert Dairy Co.,* 254 A.2d 473, 476 (Conn. 1968) ("The primary purpose of an interrogatory is to elicit a determination of material facts and to furnish the means of testing the correctness of the verdict rendered." (Citation omitted.)); *Burmac Metal Finishing Co. v. W. Bend Mut. Ins. Co.,* 825 N.E.2d 1246, 1259 (Ill. App. Ct. 2005) (" 'The purpose of a special interrogatory is not to instruct the jury, but to act as a check on its verdict.' Specifically, special interrogatories are used to test the general verdict against the jury's conclusions as to the ultimate controlling facts." (Citation omitted.)); *Freeman v. Norfolk & W. Ry.,* 635 N.E.2d 310, 313 (Ohio 1994) ("The purpose of an interrogatory is to 'test the jury's thinking in resolving an

ultimate issue so as not to conflict with its verdict.'" (Citation omitted.)).

Both special verdicts and special interrogatories submitted with a general verdict are findings by the jury that the court uses to enter judgment—like pieces of a puzzle. In the case of special verdicts, the jury merely gives the court the pieces, and the court assembles the puzzle and enters judgment. In the case of a general verdict with special interrogatories, the jury assembles the puzzle to complete the picture. If all the pieces fit together correctly, the court enters judgment. However, if the pieces do not fit together correctly, the court can see what went wrong and attempt to fix the puzzle instead of starting over again with a new jury. Each puzzle piece, or finding, must be supported by the evidence presented. *Cowan v. Flannery*, 461 N.W.2d 155, 158 (Iowa 1990). Furthermore, the findings made cannot be internally inconsistent. *See Dutcher*, 221 N.W.2d at 761 ("[W]hen there is an irreconcilable conflict between the general verdict and special findings the latter must prevail and the general verdict cannot stand."); 89 C.J.S. *Trial* § 992, at 603 (2001) (stating that when findings in special verdicts "are utterly and irreconcilably inconsistent with, or repugnant to, each other, they neutralize, nullify, or destroy each other").

Our rules of civil procedure contemplate instances of inconsistent findings by the jury, and specifically address conflicts in answers to special interrogatories submitted with a general verdict. Iowa R. Civ. P. 1.934. If the interrogatory answers are consistent with each other but any answer is inconsistent with the general verdict, then the court has three options to consider. *Id.* It may send the jury back for additional deliberations, enter judgment according to the special interrogatory answers, or grant a new trial. *Id.*; *accord Berghammer v. Smith*, 185 N.W.2d 226, 234 (Iowa 1971) (noting special interrogatories trump the

general verdict in case of a conflict). However, if the interrogatory answers are inconsistent with each other and any is inconsistent with the general verdict, the options of the court are narrowed to two. Iowa R. Civ. P. 1.934. The court may either send the jury back for additional deliberations or grant a new trial. *Id.* In this instance, the court no longer has the option to enter judgment. This option is not available because inconsistent answers constitute inconsistent findings that cannot support a judgment. *See Bangs v. Pioneer Janitorial of Ames, Inc.,* 570 N.W.2d 630, 632 (Iowa 1997) ("If a verdict is internally inconsistent . . . , and there is no way to determine the jury's intent, the proper remedy is a new trial." (citing *Cowan,* 461 N.W.2d at 160; *Hoffman v. Nat'l Med. Enters., Inc.,* 442 N.W.2d 123, 127 (Iowa 1989))); *cf.* 89 C.J.S. *Trial* § 992, at 603 (stating that when findings in special verdicts "are utterly and irreconcilably inconsistent with, or repugnant to, each other, they neutralize, nullify, or destroy each other").

Although rule 1.933, governing special verdicts, does not specifically address the possibility of an internal inconsistency in the answers in the special verdict, we recognize that rule 1.934, governing special interrogatories supplementing general verdicts, is construed together with rule 1.933. *See Crookham v. Riley,* 584 N.W.2d 258, 269 (Iowa 1998) (stating the rules are construed *in pari materia,* meaning "taken together as if they were one law, . . . construed together as though they constituted one act" (citing *Fitzgerald v. State,* 220 Iowa 547, 553, 260 N.W. 681, 683 (1935))). Thus, the rules governing inconsistent special interrogatory answers would apply to inconsistent answers in a special verdict. Both answers constitute special findings in the case and must be internally consistent. If not, the court must either resume deliberations or grant a new trial. Iowa R. Civ. P. 1.934. Inconsistent

answers that constitute special findings cannot support a judgment. Our prior cases illustrate this rule. *Compare Crookham*, 584 N.W.2d at 269 (when answers to special verdict in malpractice action finding lawyer negligent were consistent with each other but inconsistent with a general verdict for the lawyer on a counterclaim for unpaid fees, trial court had discretion to consider all options including entering judgment for client on the counterclaim consistent with the answers to the special verdict), *and Dutcher*, 221 N.W.2d at 762 (answers to special interrogatories were consistent with each other but one was inconsistent with the general verdict; court was within its discretion in ordering new trial in lieu of other two options of resubmission or entering judgment), *with Bangs*, 570 N.W.2d at 632 (answers to special verdict were inconsistent with each other (damage itemization[3] awarded $100,000 for past and future pain and suffering but $0 for medical expenses); new trial was required because there was no way to determine whether jurors denied medical expenses because they thought they were paid by a third party or whether they compromised on liability by reducing total damages awarded), *and Guzman v. Des Moines Hotel Partners, Ltd.*, 489 N.W.2d 7, 12 (Iowa 1982) (stating the court properly resubmitted the case to the jury when answers in special verdict were internally inconsistent in that the jury found negligence, but no proximate cause and then proceeded further to award damages), *and Cowan*, 461 N.W.2d at 160 (trial court abused its discretion in failing to grant new trial where answers in special verdict were inconsistent with each other (awarded $21,220 for medical expenses but $0 for pain and suffering)), *and Shewry v. Heuer*, 255 Iowa 147, 155, 121 N.W.2d 529, 534 (1963) (trial court abused its

---

[3]Itemizations of damages are treated as special verdicts. *Cowan*, 461 N.W.2d at 158.

discretion by failing to order a new trial when special verdicts were internally inconsistent (awarded medical expenses but no pain and suffering)). *But see Berhow v. Kroack*, 195 N.W.2d 379, 384 (Iowa 1972) (trial court properly granted judgment notwithstanding the verdict when answers to special interrogatories were internally inconsistent and inconsistent with general verdict).

The parties maintain that the verdict in this case constituted a special verdict, and they dispute how the rules apply to resolve the case. While the verdict did not actually require the jury to enter a general verdict, it did require the jury to determine the total recoverable damages by subtracting the amount of damages CPT failed to mitigate from the total damages sustained from the breach of the contract. This is not a process normally associated with a special verdict. *See Pexa*, 686 N.W.2d at 160 (stating that in a special verdict, "the jury resolves pertinent *factual* issues pursuant to the court's instructions, and the trial court enters the general verdict 'by applying the applicable law to the jury's factual determinations'" (citation omitted; emphasis added)). Nevertheless, the rules governing inconsistent answers in a verdict are the same. Whether the answers are in response to special interrogatories or are answers to a special verdict, if they are inconsistent, then the court must either resume deliberations or grant a new trial. Iowa R. Civ. P. 1.934; *see Crookham*, 584 N.W.2d at 269 (stating rules 1.933 and 1.934 are construed *in pari materia*).

It is fundamental that these principles only apply to inconsistent verdicts or inconsistent answers within the verdict. If the answers are not inconsistent, the court, of course, is permitted to enter judgment consistent with the answers. Iowa R. Civ. P. 1.934. Thus, the first step in the application of the rule is to determine if an inconsistency exists.

We have said that a verdict is not inconsistent if it can be harmonized in a reasonable manner consistent with the jury instructions and the evidence in the case, including fair inferences drawn from the evidence. *Hoffman*, 442 N.W.2d at 126-27. The test recognizes that the determination of whether two answers are inconsistent requires the court to consider how the jury could have viewed the evidence and how that view of the evidence fits into the requirements of the instructions or the law applicable to the case. *See* 66 C.J.S. *New Trial* § 82, at 172 (1998) ("In determining whether findings or answers are inconsistent or irreconcilable so as to warrant a new trial, the findings or answers are to be construed in light of the surrounding circumstances and in connection with the pleadings, instructions and issues submitted."). Ultimately, two answers are not inconsistent if they can be harmonized under the evidence and the instructions. *See, e.g., Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 892 (Iowa 1996) (jury's award of damages for pain and suffering but no award of damages for medical expenses was not inconsistent because the jury could have "found none of his medical expenses were caused by the fall at issue"); *Brant v. Bockholt*, 532 N.W.2d 801, 805 (Iowa 1995) (jury's award of "$31,000 damage for future medical expenses for treatment of facial scarring" and no damages for loss of function of the body was not inconsistent because "plaintiff presented no evidence of functional impairment due to facial scarring," and the jury could have included the damages on this item with the umbrella of future pain and suffering). Thus, the process of determining whether answers are inconsistent focuses on the evidence and the law, and the court must decide if the two answers at issue can be harmonized in light of the evidence and the law. When, under this analysis, two answers or findings by the jury would compel the rendition

of different judgments, the answers are inconsistent. 89 C.J.S. *Trials* § 993, at 605-06; *see id.* § 992, at 604 ("The test to determine if conflict between jury questions is irreconcilable is whether one answer would establish a cause of action while the other answer would destroy it, or whether taking one finding alone a judgment should be entered in favor of the plaintiff and taking the other finding alone a judgment should be rendered for the defendant.").

This process of determining whether answers are inconsistent by attempting to harmonize the answers with the evidence and the law is separate from the process of reconciling two answers determined to be inconsistent. In this case, for example, there was evidence to either support or reject the claim of failure to mitigate damages as instructed by the trial court. However, under the instructions, the jury could not find that CPT did not fail to mitigate damages and then reduce damages based on the failure to mitigate. The two findings by the jury would compel different judgments. Thus, the two answers by the jury were clearly inconsistent with the instructions. Nevertheless, the district court did not proceed to apply the rules governing inconsistencies in a verdict, but proceeded to harmonize the inconsistent answers by concluding that the jury did not intend to answer "no" to question 4, but intended to answer "yes." In this way, the district court found the answers were consistent and entered judgment. However, the district court went too far under the guise of harmonizing purportedly inconsistent answers and engaged in a process of reconciliation not available when two special findings are inconsistent with each other, and both are supported by evidence. *See* Iowa R. Civ. P. 1.934 ("If the answers are inconsistent with each other, . . . the court shall not order judgment, but either send the jury back or order a new trial.").

A court may reform a verdict by correcting a mistake. *Ostrem v. State Farm Mut. Auto. Ins. Co.*, 666 N.W.2d 544, 546 (Iowa 2003). We recognize that "verdicts are to be liberally construed to give effect to the intention of the jury and to harmonize verdicts if it is possible to do so." *Hoffman*, 442 N.W.2d at 126 (citations omitted). However, this power is very limited and only permits the court to correct mistakes or errors in the verdict that are technical or ministerial in nature. *Ostrem*, 666 N.W.2d at 546. A judge cannot exercise the power to substitute its judgment for the judgment of the jury. *Id.*

In this case, the district court may have uncovered a very logical explanation for the inconsistent answers. Yet, this explanation necessarily involved some degree of speculation. It involved speculation because there was evidence that would have permitted the jury to either accept or reject the mitigation-of-damages claim. Verdicts can only be reformed when the change "clearly and definitely expresses the jury's intentions." *Id.* When two answers in a verdict are both supported by substantial evidence but are inconsistent under the instructions, a court may not attempt to reconcile the inconsistency and enter a judgment by correcting the inconsistency to conform to the intent of the jury because the two conflicting views of the evidence would necessarily produce some speculation about the intent of the jury. *See Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) (" 'Where a jury verdict is the result of confusion or is inconsistent in law, the trial court should grant a new trial; a new trial is necessary because, once the jury is dismissed, any attempt to reconcile the inconsistencies in a verdict must be based on mere speculation about the jury's intent.' " (quoting *City of Bessemer v. Foreman*, 678 So. 2d 759, 760 (Ala. 1996))).

The answers in the verdict in this case were internally inconsistent as a matter of law. The district court had no power to correct the inconsistency in the verdict because there was substantial evidence to support both answers. Thus, the court had no power to enter judgment following discharge of the jury, but was required (because the jury had been discharged) to grant a new trial as a matter of law. It was the only remedy available to the court to exercise under the circumstances.

## IV. Evidentiary Ruling

Because this case must be remanded for a new trial, we proceed to address the disputed evidentiary ruling by the district court because it is likely to arise on retrial. *See McElroy v. State*, 703 N.W.2d 385, 392 (Iowa 2005) (stating we may consider issues likely to arise on retrial (citing *McElroy v. State*, 637 N.W.2d 488, 501-02 (Iowa 2001); *Gacke v. Pork Xtra, L.L.C.,* 684 N.W.2d 168, 184-85 (Iowa 2004); *Greenwood v. Mitchell,* 621 N.W.2d 200, 207-08 (Iowa 2001))). As previously noted, the district court excluded evidence of the terms of the 2001 contract between John Deere and CPT, ruling it was not relevant to the interpretation of the 1996 contract. We must decide whether this was an abuse of discretion. *See State v. Sinclair*, 582 N.W.2d 762, 764 (Iowa 1998) ("This court reviews the trial court's decision on the relevancy of evidence for an abuse of discretion.").

One issue the jury had to decide in resolving the contract claim in this case was whether paragraph 3(c)[4] of the 1996 contract applied to

---

[4]Paragraph 3(c) provided:

> If [CPT] discontinues or adds any service covered by this Agreement, [CPT] shall notify [John Deere] prior to discontinuance or addition, and the rate set forth in [the ancillary rate structure] shall be adjusted by agreement of both parties. [John Deere] shall review, at the time of the addition or deletion, the need in the network for the service to appropriately handle access. If the need for the addition of the service

services provided at a new location. CPT sought to introduce the 2001 contract because it contended paragraph 12 of that contract, which specifically addressed the situation of opening a new office,[5] showed that John Deere did not intend paragraph 3(c) of the old contract to cover the situation of addition of a new office. Rather, CPT claimed paragraph 3(c) only applied to the situation of addition of particular services at existing locations.

Generally, contracts are interpreted based on the language within the four corners of the document. *See Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005) ("It is a fundamental and well-settled rule that when a contract is not ambiguous, we must simply interpret it as written." (citing *State Pub. Defender v. Iowa Dist. Ct.*, 594 N.W.2d 34, 37 (Iowa 1999); *Rogers v. Md. Cas. Co.*, 252 Iowa 1096, 1098-99, 109 N.W.2d 435, 437 (1961))). However, when the language is ambiguous, we must engage in a process of interpretation to search for "the meanings attached by each party at the time the contract was made." E. Allan Farnsworth, *Contracts* § 7.9, at 458 (3d ed. 1999). To reveal this intent, extrinsic evidence is admissible " 'when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain.' " *Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997) (quoting *Kroblin v. RDR Motels, Inc.*, 347

---

exists, [CPT] shall comply with [John Deere's] credentialing requirements for that new service.

[5] Paragraph 12 provided:

[CPT] understands and agrees that if [CPT] opens or enters into business in another location, that does not cause automatic inclusion into the products listed on [the product participation matrix/fee schedule] for services provided at that location. [CPT] must notify [John Deere] of the new location and [John Deere] at its sole discretion will determine the need of entering into a contractual relationship for the new location.

N.W.2d 430, 433 (Iowa 1984)). However, the 2001 contract in this case does little to shed light on the situation of the parties or any attendant circumstances in 1996—the time relevant to the interpretation of the governing contract. *Id.*; *see also* 17A Am. Jur. 2d *Contracts* § 346, at 333-34 (2004) ("The intention, with which the law is concerned in construing and giving effect to a contract, is that of the parties at the time of entering into the contract, regardless of any events occurring afterward, at least if such subsequent events were not reasonably within the contemplation of the parties when the contract was made."). A specific clause placed in the 2001 contract by the parties concerning new offices does not show the intent of the parties in 1996 regarding the application of paragraph 3(c) to new offices. Thus, the 2001 contract was not relevant to the interpretation of the 1996 contract. It did not make either of the competing meanings asserted by the parties more likely or less likely than it would be without the evidence. *See* Iowa R. Evid. 5.401 (" *'Relevant evidence'* means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). We find no abuse of discretion in its exclusion.

### V.    Conclusion

We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial. To avoid repetition of this resource-wasting result, we repeat out prior admonition that "[t]he trial court should not discharge the jury until it determines the special verdict is consistent and supported by evidence." *Cowan*, 461 N.W.2d at 160; *see also* 75B Am. Jur. 2d *Trial* § 1854, at 595 (1992)

("Ordinarily, when a jury returns inconsistent or incomplete answers to a special verdict, it is preferable to send the jury back for further deliberation.").

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**