# IN THE COURT OF APPEALS OF IOWA

No. 13-2086
Filed April 8, 2015

SALEM UNITED METHODIST CHURCH
OF CEDAR RAPIDS, IOWA,
　　　Plaintiff-Appellee,

vs.

CHURCH MUTUAL INSURANCE COMPANY,
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

　　　An insurer contends the district court improperly construed clear and unambiguous exclusions in the policy and erred in attempting to harmonize the jury's answers to the special verdict form. **REVERSED AND REMANDED.**

　　　Robert B. McMonagle of Lane & Waterman, L.L.P., Davenport, for appellant.

　　　William H. Roemerman and Stephanie A. Legislador of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for appellee.

　　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

Salem United Methodist Church of Cedar Rapids, Iowa, sought coverage from its insurer, Church Mutual Insurance Company, for damage sustained during a flood. Following a jury trial, Salem prevailed. On appeal, Church Mutual contends the district court improperly construed clear and unambiguous exclusions in the policy and awarded damages in an amount contrary to the terms of the policy and the jury's answers to special interrogatories. Because we find the court erred in construction of the insurance policy and we are unable to harmonize the answers under the evidence and the law, we reverse the district court's judgment and remand for a new trial.

**I. Background Facts and Proceedings.**

Salem had property insurance, but not flood insurance, through Church Mutual. In 2008, the Cedar River overflowed its banks and inundated the City of Cedar Rapids.

Salem sought coverage from Church Mutual for losses resulting from sewer backup. When the insurer denied coverage, Salem sued for breach of contract. The case proceeded to jury trial. The jury completed a special verdict form, as follows:

> Question No. 1: Did Salem prove that there was sewer back up that invaded its property through sewers or drains?
>
> Answer "yes" or "no"
>       ANSWER: YES
>
> [If your answer is "no" do not answer Question No. 2, but proceed to Question 3]
>
> Question No. 2: Did Salem prove that the sewer back up was caused by an event away from its property?

Answer "yes" or "no"

ANSWER: YES

Question No. 3: Did Salem prove that water or other liquids leaked or flowed from plumping equipment?

ANSWER: YES

[If your answer to eithers Questions 1 or 2, and Question 3 were "no", do not answer any further questions].

Question No. 4: With respect to the claim of sewer back up damage, did Church Mutual prove that the sole cause of the damage to Salem's property was flood?

Answer "yes" or "no."

ANSWER: NO

Question No. 5: Did Church Mutual prove that the leakage or flowing of water or other liquids from plumbing equipment was directly or indirectly caused by flood?

ANSWER: NO.

[If you answer to both Questions 4 and 5 were "yes," do not answer any further questions.]

Question No. 6: State the total amount of loss sustained by Salem in the basement of their facility as a result of the events of June 11 & 12, 2008.

TOTAL: $705,765.07

Question No. 7: [Answer this question only if you answered "yes" to Questions 1 and 2, and "no" to Question 4] What amount of the total amount of loss sustained by Salem in the basement of their facility as a result of the events of June 11 & 12, 2008, was caused by the back up of the sewer?

TOTAL: $0

Question 8: [Answer this question only if you answered "yes" to Question 3 and "no" to Question 5] What amount of the total amount of loss sustained by Salem in the basement of their facility

as a result of the events of June 11 & 12, 2008, was caused solely by the leakage or flowing of water or other liquids from plumbing equipment?

TOTAL: $0

The district court accepted the verdict form, and the jury was dismissed.

The district court concluded "that if a covered peril combines with any other peril to cause the loss, there is coverage for the loss. The jury's answers do not require speculation on the part of the Court, and it is clear the jury's damages award was based on the combination of the two causes of [Salem's] loss." (Internal citation excluded.) Additionally, the court found "the issues of ambiguity and reasonable expectations are moot under these facts." The court entered judgment for Salem in the amount of $705,765.07. Church Mutual appeals.

## II. Standard of Review.

We review the district court's construction of an insurance policy for corrections of error at law. *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012).

## III. Discussion.

Our supreme court has recently summarized our well-settled rules governing the construction and interpretation of insurance policies as follows:

> The cardinal principle . . . is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, we determine the intent of the parties by looking at what the policy itself says. If a term is not defined in the policy, we give the words their ordinary meaning. We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase.
> [A] policy is ambiguous if the language is susceptible to two *reasonable* interpretations when the contract is read as a whole. If

the policy is ambiguous, we adopt the construction most favorable to the insured. An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms. Moreover, ambiguity is not present merely because the provision could have been worded more clearly or precisely than it in fact was. If an insurance policy and its exclusions are clear, the court will not write a new contract of insurance for the parties. We construe exclusions strictly against the insurer. Nevertheless, we must enforce unambiguous exclusions as written.

*Amish Connection, Inc. v. State Farm Fire and Cas. Co.*, ___ N.W.2d ___, 2015

WL 1260085, at *10 (Iowa 2015) (internal quotation marks and citations omitted).

Here, the relevant policy language is as follows:

**EXCLUSIONS**

We will not pay for loss or damage caused directly or indirectly by any of the following*. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*
        . . . .
7. Water.
a. *Flood,* surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
        . . . .
**ADDITIONAL COVERAGE—BACK UP THROUGH SEWERS AND DRAINS**
Subject to all other terms and conditions of this policy, we will pay for direct physical loss or damage to Covered Property *caused by back up of water or sewage through sewers or drains only if caused by an event away from the described buildings and when the damage is not caused by flood,* surface water*,* waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not, and which did not enter the building through foundations, walls, floors, windows, cracks, roofs, or through other opening of the building.
*Sewer or water damage occurring as a result of, either before or after, the excluded flood,* surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not, and entering the building through foundations, walls, floors, windows, cracks, roofs, or through other openings of the building *is not covered.*

(Emphasis added.) Church Mutual first contends the policy clearly and unambiguously provides that there is no coverage for damages arising from concurrent causes when one of the causes is excluded and the district erred in ruling otherwise.[1] Secondly, Church Mutual contends even if the anti-concurrent cause language is not given effect under these facts, the district court erred as the jury's answers to the special verdict are inconsistent and may not be harmonized to support a verdict for Salem.

### A. Policy Coverage for Concurrent Causes.

The exclusion for flood damage is clear. The policy also unambiguously excludes coverage for damages that are concurrently caused by a covered cause—such as sewer back up—and an uncovered cause—such as flooding by its language, "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." "If an insurance policy and its exclusions are clear, the court will not write a new contract of insurance for the parties." *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 502 (Iowa 2013). "Insurance coverage is a contractual matter and is ultimately based on policy provision." *Jones v. State Farm Mut. Auto. Ins. Co.*, 760 N.W.2d 186, 188 (Iowa 2008). And in a similar claim with identical policy language, we concluded in *Lifeline Ministries Church v. Church Mutual Insurance Co.,* No. 12–1181, 2013 WL 2107408, at *3 (Iowa Ct. App. May 15, 2013):

---

[1] Salem contends this alleged error is not preserved for our review. Church Mutual argued that the policy "does not cover concurrent loss events where one cause is excluded" in its post-trial brief, and the district court found there was coverage in spite of this contention. Thus, the issue is preserved for review.

The policy plainly covers "damage to Covered Property caused by back up of water or sewage through sewers or drains only . . . when the damage is not caused by flood." The policy reiterates "[s]ewer or water damage occurring as a result of, either before or after, the excluded flood . . . is not covered." And, in its general exclusion section, the policy separately excludes "loss or damage caused directly or indirectly by . . . flood."

The district court relied on *Kalell v. Mutual Fire and Auto Insurance Co.*, 471 N.W.2d 865, 867 (Iowa 1991) for the proposition, "[I]f a covered peril combines with any other peril to cause the loss, there is coverage for the loss." But *Kalell* did not create a maxim that the insurance company must provide coverage when a covered and an uncovered peril combine to cause a loss. 471 N.W.2d at 868–69. Rather, *Kalell* holds that "[w]hen insurance policies lack . . . an anticoncurrent-cause provision, . . . an accident that has two independent causes, one of which is covered and one excluded, is covered unless the excluded cause is the sole proximate cause." *Amish Connection, Inc.*, ___ N.W.2d ___, 2015 WL 1260085, at *10 (discussing the court's holding in *Kalell*). Parties are free, as Salem and Church Mutual did here, to contract otherwise. *See Boelman*, 826 N.W.2d at 506 ("[W]e allow insurers to limit coverage to only specific claims."); *see also Kalell*, 471 N.W.2d at 868 ("If [the insurer] intended to exclude coverage of an incident simply because it involved a motor vehicle, it is incumbent on it to say so in its policy."). In this case, the policy in question does contain an anticoncurrent-cause provision. Both the facts and the policy in question in *Kalell* are readily distinguishable from those in the present case. *See* 471 N.W.2d at 866 (considering a homeowner's policy and the meaning of "arising out of" language in exclusion clause). For these reasons, the district

court erred in construing the policy and if a flood is a concurrent cause, there is no coverage.

### B. Special Verdict.

In our recent case of *Lifeline Ministries*, we recited the applicable law to these proceedings as follows:

> "A special verdict consists entirely of questions that elicit special written answers to resolve the material issues of fact in the case, and the court then enters judgment based on the findings made by the jury." *Clinton Physical Therapy Servs.,* 714 N.W.2d at 610. The answers to the questions "must be internally consistent." *Id.* at 612 (noting that rule 1.933 is read in tandem with rule 1.934 governing special interrogatories supplementing general verdicts, which specifically addresses inconsistent answers). If they are not consistent, "the court must either resume deliberations or grant a new trial." *Id.* at 613.
> "[T]he process of determining whether answers are inconsistent focuses on the evidence and the law, and the court must decide if the two answers at issue can be harmonized in light of the evidence and the law." *Id.* "When, under this analysis, two answers or findings by the jury would compel the rendition of different judgments, the answers are inconsistent." *Id.* The "process of determining whether answers are inconsistent by attempting to harmonize the answers with the evidence and the law is separate from the process of reconciling two answers determined to be inconsistent." *Id.* at 613–14.

2013 WL 2107408, at *4.

Salem contends Church Mutual did not preserve error on the issue of inconsistent answers. Although the parties agreed to a sealed verdict, the record reflects that the district court opened the verdict and informed counsel before discharging the jury. Because Church Mutual did not object to any inconsistency in the jury's answers, Salem contends it did not preserve error as the jury could have been sent back in for further deliberations to correct any such errors.

We agree with Salem that there is some case law suggesting failure to object when the opportunity to correct inconsistencies exists may not preserve error. However, in *Clinton Physical Therapy Services, P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 610 (Iowa 2006), our supreme court noted in cases of special verdicts:

> [T]he jury resolves pertinent factual issues pursuant to the court's instructions, and the trial court enters the general verdict by applying the applicable law to the jury's factual determinations. Nevertheless, the rules governing inconsistent answers in a verdict are the same. Whether the answers are in response to special interrogatories or are answers to a special verdict, if they are inconsistent, then the court must either resume deliberations or grant a new trial.

(Internal citations omitted.) The court also stated, "[A] sealed verdict may constitute a waiver of the additional-deliberations option, but it would not constitute a waiver of other remedies." *Id.* at 610. Because the remedy of a new trial remains, Church Mutual has not waived error.[2]

Notwithstanding, we do not perceive Church Mutual's arguments on appeal as contending the jury's answers were inconsistent. Rather, we construe Church Mutual's arguments as contending the district court erred in its attempt to harmonize the answers with the applicable facts and law. As we have noted from the principles cited in *Clinton Physical Therapy*, the process of harmonizing the answers is a different process than reconciling conflicting answers. 714 N.W.2d at 610. If the answers may be reasonably harmonized under the

---

[2] The court's comments to the jury indicate counsel was given the opportunity to complain about any inconsistency in the jury's answers. But the better practice is to make a record of the conversations with counsel, so we can be certain the district court informed counsel that the jury had not yet been discharged and was available to continue their deliberations if the answers were inconsistent.

evidence and the instructions, they are not inconsistent. *Id.* at 613. The supreme court explained:

> The test recognizes that the determination of whether two answers are inconsistent requires the court to consider how the jury could have viewed the evidence and how that view of the evidence fits into the requirements of the instructions or the law applicable to the case. *See* 66 C.J.S. New Trial § 82, at 172 (1998) ("In determining whether findings or answers are inconsistent or irreconcilable so as to warrant a new trial, the findings or answers are to be construed in light of the surrounding circumstances and in connection with the pleadings, instructions and issues submitted.").

*Id.*

The district court concluded the answers could be reasonably harmonized, and both parties agree. However, each contends the answers may only be harmonized in support of a verdict in its favor. The district court reached the following conclusions:

> The Court finds that when the policy is constructed as applied to the facts, as determined by the jury, judgment should be entered in favor of Plaintiff. Plaintiff admits that it has the burden to show that its loss fell within the general promise of coverage in the policy. The burden of pleading and proving an exclusion or exception in a policy of insurance is placed on the insurer. The jury's response to Question 4 establishes that the jury did not believe Defendant met its burden of proof in showing that the sole cause of the damage to Salem's property was flood. The jury's response to Question 5 establishes that the jury did not believe Defendant met its burden of proof in showing that the leakage or flowing of water or other liquids from plumbing equipment was directly or indirectly caused by flood. The fact-finding was supported by the evidence, particularly the testimony of Mr. Pankey and Mr. Ransom. The jury's answers to Questions 1 and 2 show that Plaintiff carried its burden of proof in establishing that there was sewer back up that invaded its property through sewers or drains, and that the sewer back up was caused by an event away from its property. These answers from the jury provide a factual basis for concluding that, under the terms of the policy, the loss fell within the general promise of coverage in the policy in that there was a covered loss due to leaking plumbing and back up through sewers and drains.

> Further, the jury's answers to Questions 7 and 8 show that the jury did not believe any part of the damages was caused solely by sewer back up or solely by plumbing leakage, but rather the damages were caused by a combination of these two causes. There is authority in Iowa supporting a finding that if a covered peril combines with any other peril to cause the loss, there is coverage for the loss. The jury's answers do not require speculation on the part of the Court, and it is clear that the jury's damages award was based on the combination of the two causes of Plaintiff's loss.
>
> With respect to the arguments regarding ambiguity and reasonable expectations, the Court concludes that because the jury determined that the sewer back up damage and damage from leaking or flowing pipes is not damage that is excluded from coverage under the terms of the policy, the issues of ambiguity and reasonable expectations are moot under these facts. Based on the post-trial issues briefed by the parties, the Court finds judgment should be entered in favor of Plaintiff.

(Internal citations and quotation marks omitted.)

Clearly the district court's conclusions relied upon principles espoused in *Kalell,* which we have found distinguishable. We do not know the probable resolution by the district court had it considered the fact that the policy prohibited coverage when both a covered peril and an uncovered peril or perils jointly caused the damage.

We have reviewed the arguments of the parties and have painstakingly considered the answers provided by the jury. It is our conclusion that we can only speculate what verdict should have been entered and cannot harmonize the answers with the evidence and the law.

One concern we have is that the jury was never asked if Salem's damages were caused by concurrent causes and if so, whether Church Mutual proved that the flood was a concurrent cause of Salem's damages. *See Farm Bureau Life Ins., v. Chubb Custom Ins. Co.,* 780 N.W.2d 735, 742 (Iowa 2010)

("Insurers relying on exclusions from coverage have the burden to prove their applicability.").[3]

Another difficulty we face relates to verdict form questions six, seven, and eight, which refer to "the events of June 11 & 12, 2008." The jury was not instructed upon a definition of the phrase, and we can only surmise what it means. We are unable to correlate this phrase with terms of the insurance policy.

Because we are unable to harmonize the answers under the evidence and the law, we reverse the district court's judgment and remand for a new trial.

**REVERSED AND REMANDED.**

---

[3] The jury was only asked if Church Mutual proved the leakage or flowing of liquids from plumbing equipment was directly or indirectly caused by flood. To this question the jury answered "no." However the jury was not asked if the sewer back up was directly or indirectly caused by the flood. Further, we do not believe Church Mutual has met its burden of proof by simply proving that neither of Salems's two claimed causes were the sole proximate cause for the damages without proving the flood was a concurrent cause. Although it may be unlikely, the jury could have concluded the leakage and the sewer back up were the only concurrent causes for Salem's damages.