# IN THE COURT OF APPEALS OF IOWA

No. 19-0156
Filed September 2, 2020

**MANATT'S INC.,**
 Plaintiff-Appellee/Cross-Appellant,

**vs.**

**TANAM REAL ESTATE, LLC and JOSEPH J. MANATT,**
 Defendant-Appellants/Cross-Appellees.
_____

   Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


   Joseph Manatt and Tanam Real Estate, LLC appeal a district court order

for a new trial.  Manatt's Inc. cross-appeals the scope of the new trial.  **AFFIRMED**

**ON APPEAL AND CROSS-APPEAL.**



   Mark E. Weinhardt and David N. Fautsch of The Weinhardt Law Firm, Des

Moines, for appellants.

   John E. Lande and Bryan P. O'Neill of Dickinson, Mackaman, Tyler, &

Hagen, P.C., Des Moines, for appellee.



   Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**MULLINS, Judge.**

Joseph Manatt (Joe) and Tanam Real Estate, LLC, (Tanam) appeal a district court order granting a new trial. Manatt's Inc. (Manatt's) cross-appeals, arguing the district court should have limited the new trial's scope.

## I.    Background Facts and Proceedings

Manatt's is a family-owned road construction company. Manatt's is one of several affiliated businesses under the umbrella of Manaco Corporation (Manaco). Three generations of the Manatt family have owned and operated Manaco. In 2007, Manatt's purchased land that is now used for the business as a sand pit in Story County. In February 2016, Manatt's purchased an L-shaped neighboring property, the C.G. Lee property. That land is also now used as a sand pit. There was a smaller parcel next to the C.G. Lee parcel, the Plath parcel, that was not obtained in February 2016. Manatt's expressed interest in the Plath parcel in the summer of 2016. Joe was charged with negotiations for the Plath parcel on behalf of Manatt's. Through Joe, Manatt's made an offer of approximately $12,500 per acre on the Plath parcel, conditioned on acceptance within one week. No agreement could be reached within that week, and the offer expired. There was limited discussion between Joe and the real estate agent representing the sellers of the Plath parcel for the 2016 summer. However, the agent told Joe the sellers may be willing to part with the property in the future.

Over the years of Joe's employment with Manatt's, he became unhappy with the large size of the company. He was also frustrated his siblings were not employed by the family business. In 2016, Joe voiced his displeasure to the company's board of directors. In May 2016, Joe proposed that a small portion of

the business be siphoned off for him and his siblings to run independently. That proposal was denied. Joe also threatened to hold his shares of Manaco stock and eventually sell them on the open market to a competitor. The relationship between Joe and Manatt's continued to sour through the fall of 2016. Joe's employment was terminated in December 2016, but he remained a shareholder in Manaco.

In early 2017, Joe established The Manatt Group, LLC (Manatt Group). The Manatt Group owns Joe's new road construction company, InRoads, LLC, and a real estate company, Tanam. In January 2017, Joe contacted the agent for the Plath parcel and discussed buying it; he commented generally on Manatt's-owned land that was for sale. The agent testified he was not aware Joe was no longer employed by Manatt's. In April, Joe contracted to buy the 48.24 acre Plath parcel for $635,000, around $13,100 per acre. Later that month, a Manatt's employee contacted the agent about the property. Joe had a cease-and-desist letter sent to Manaco members prohibiting further contact with the seller regarding the Plath parcel. In June, Joe received and recorded a deed for the Plath parcel.

Manatt's filed suit against Joe and Tanam in July 2017. Manatt's claims included usurpation of corporate opportunity, breach of fiduciary duty, conversion, and intentional interference with a prospective business opportunity. Manatt's requested an award of punitive damages. After a trial, a jury found Manatt's had proved its claim of breach of fiduciary duty but did not prove intentional interference with a prospective business opportunity. The jury awarded no compensatory damages. Manatt's moved for a new trial. The motion was granted, and a new trial was ordered to consider both "liability and damages related to [Manatt's] claim

for breach of fiduciary duty." Tanam filed a motion to reconsider, which was denied. The present appeal and cross-appeal followed.

## II. Standard of Review

"The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion." *Richards v. Anderson Erickson Dairy Co.*, 699 N.W.2d 676, 678 (Iowa 2005) (quoting *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001)). "To the extent the motion is based on a discretionary ground, we review it for abuse of discretion. But if the motion is based on a legal question, our review is on error." *Id.* (quoting *Roling v. Daily*, 596 N.W.2d 72, 76 (Iowa 1999)). "We review the district court's conclusion as to whether answers are inconsistent for correction of errors at law." *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006). "We liberally construe jury verdicts to give effect to the intention of the jury." *Whitlow v. McConnaha*, 935 N.W.2d 565, 569 (Iowa 2019). Appellate courts "are slower to interfere with the grant of a new trial than with its denial." *Id.* (quoting *Jack v. Booth*, 858 N.W.2d 711, 718 (Iowa 2015)). "We review the trial court's ruling on a motion for directed verdict for the correction of errors of law." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

## III. Discussion

### A. Viability of Breach-of-Fiduciary-Duty Claim

Joe and Tanam argue the breach-of-fiduciary-duty claim is inviable as a matter of law because no fiduciary duties were owed to Manatt's after Joe's termination. They moved for a directed verdict, which was denied. Manatt's

argued Joe was still bound by his fiduciary duties, even after his termination, and was in breach when he purchased the Plath parcel for his personal gain.

A motion for a directed verdict will be granted "only if there was no substantial evidence to support the elements of the plaintiff's claim." *Bellville*, 702 N.W.2d at 473. Evidence is substantial if "a reasonable mind would accept [it] as adequate to reach a conclusion." *Id.* at 474 (internal quotation marks omitted). Courts view the evidence and all legitimate inferences therefrom in "in the light most favorable to the plaintiff." *Id.* Jury instruction eleven listed the four elements required for a breach-of-fiduciary-duty claim. To summarize, the elements are: (1) a fiduciary duty existed between Manatt's and Joe, (2) Joe breached the fiduciary duty, (3) Joe's breach caused damage to Manatt's, and (4) the amount of damages Manatt's sustained due to the breach.

In the answer to the petition, Joe admitted he was a member of the Manatt's board of directors and did not dispute that fiduciary duties were owed to Manatt's during his tenure in that role. Yet, the evidence presented showed Joe learned about the availability of the Plath parcel that was not ever publicly listed, a negotiation range for the purchase price, and facts surrounding the seller's family situation while he was still an employee and board member for Manatt's. Those communications and negotiations then continued after Joe's exit from Manatt's. The emails presented at trial show Joe updated his email address with the realtor in January 2017, but that he continued to discuss other Manatt's properties and invoked prior negotiations Manatt's had regarding the Plath parcel as he negotiated his own purchase price. Trial testimony revealed that Manatt's was aware of the benefits of purchasing the Plath parcel prior to 2016, substantial

resources were available on the land, and that failure to acquire the property had a negative impact on Manatt's use the C.G. Lee parcel. Manatt's presented evidence regarding monetary values for lost resources due to its inability to purchase the Plath parcel and working around the setbacks following its failure to purchase it.

Considering the evidence in the light most favorable to Manatt's, it presented sufficient evidence from which a jury could find Joe owed a fiduciary duty to it with regard to the Plath parcel.

B.      Jury-Verdict Inconsistency

Joe and Tanam initially argue the verdicts were not inconsistent and sufficient evidence was presented to support the jury's finding Manatt's suffered no damages. Alternatively, they argue if there was an inconsistency, it was resolved by a special verdict. Manatt's argues the verdicts were inconsistent and the district court correctly granted a new trial on all issues. Manatt's also argues the special-verdict argument was not preserved for our review, because the first time Joe and Tanam made the argument was in its motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2) in response to the district court's grant of a new trial.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Our error preservation rules "require[] a party seeking to appeal an issue presented to, but not considered by, the district court to call to the attention of the district court its failure to decide the issue." *Id.* at 540. "The claim or issue raised does not actually

need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it." *Id.*

Tanam and Joe's motion was filed in response to the district court order granting a new trial. In the motion, they argued for the first time that the district court erred in considering all verdict questions as special verdict questions. "A motion pursuant to rule 1.904(2) is not properly used as a method to introduce a new issue not previously raised before the court." *Mills v. Robinson*, No. 08-0739, 2009 WL 2951479, at *3 (Iowa Ct. App. Sept. 2, 2009). But, the issue was first presented by the district court in its analysis of why it was granting a new trial. Joe and Tanam's motion was the first opportunity to ask the district court to reconsider the analysis it had applied. We conclude error was preserved.

We turn now to the arguments that the verdicts were not inconsistent and sufficient evidence supports the jury's finding Manatt's suffered no damages. "A verdict is not inconsistent if it can be harmonized in a reasonable manner consistent with the jury instructions and the evidence in the case, including fair inferences drawn from the evidence." *Clinton Physical Therapy Servs. P.C.*, 714 N.W.2d at 613. "Two answers are not inconsistent if they can be harmonized under the evidence and the instructions." *Id.* If "two answers or findings by the jury would compel the rendition of different judgment, the answers are inconsistent." *Id.* Courts must "consider how the jury could have viewed the evidence and how that view of the evidence fits into the requirements of the instructions or the law applicable to the case." *Id.*

In this case, jury instruction eleven was the marshalling instruction listing the elements of Manatt's breach-of-fiduciary-duty claim. It provided:

[Manatt's] must prove the following as concerns its claim for breach of fiduciary duty:

1. A fiduciary duty existed between Joseph Manatt and Manatt's Inc.;

2. Joseph Manatt breached a fiduciary duty owed to Manatt's Inc.;

3. The breach of fiduciary duty was a cause of damage to [Manatt's]; and

4. The amount of damage.

If [Manatt's] has failed to prove any of these propositions, then it is not entitled to damages. If [Manatt's] has proved all of these propositions, then it is entitled to recover damages in some amount.

Instructions twenty-five and twenty-six instructed the jury that on damages:

Instruction No. 25

The measure of damages for the claims of [Manatt's] against [Joe and Tanam] is the value of the lost opportunity or the pecuniary loss of the benefits of the prospective contractual relationship represented by the inability of Manatt's Inc. to acquire the Plath property. Stated another way, the measure of damages is an amount that would place [Manatt's] in as good a position as it would have enjoyed but for the improper conduct of the defendant.

Instruction No. 26

While you may not award damages if it is speculative and uncertain as to whether damage has been sustained, recovery will not be denied merely because the amount of damages is difficult to ascertain. So long as there is a reasonable basis in the record from which the amount of damages can be inferred or approximated, recovery may be allowed.

Questions one and three on the verdict form asked jurors to make findings on the breach of fiduciary duty claim and damages. "Question No. 1: Did Manatt's Inc. prove its claim of breach of fiduciary duty? (Answer 'yes' or 'no.')." The jury answered "yes," that the claim had been proved. "Question No. 3: What amount of compensatory damages, if any, do you award to Manatt's Inc.?" The jury answered "0," awarding no damages to Manatt's. Joe and Tanam argue question number three was a special verdict question entitled to prevail over the general verdict form in question one. We disagree because those are the two questions

that must be answered in order for Manatt's to prevail. Question three was not a clarification of facts or a separate finding of fact. *Cf. Berghammer v. Smith*, 185 N.W.2d 226, 234–35 (Iowa 1971). It was the next and required verdict in order to reach a verdict on whether Manatt's was entitled to damages. The answer by the jury, however, cannot be reconciled with its answer to question number one, which included an element that the breach of fiduciary duty had been a cause of damage to Manatt's which the jury had to decide affirmatively if it were to find liability.

The jury's finding Joe breached a fiduciary duty requires findings that Manatt's was damaged and a calculation of damages per jury instruction eleven. The fact that Joe owed fiduciary duties to Manatt's during his employment is not in dispute. Joe testified that he was privy to confidential information regarding Manatt's land acquisitions. There was also conflicting testimony regarding Joe's conduct in relation to the best interests of the company and the company's oversight of and direction to Joe regarding negotiations to purchase the Plath parcel while he was still employed by Manatt's. Earlier in this opinion, we answered the question in the affirmative as to whether as a matter of law Joe could be found liable for breach of fiduciary duty for actions he took after he left employment with Manatt's. Whether he was remains for the trier of fact.

The other two required elements of instruction eleven focus on causation and damages. Reading those elements together with instructions twenty-five and twenty-six, a jury would have to find Manatt's was damaged and value that damage financially. The damage calculation must be based on evidence presented at trial and could not be speculative. Testimony on damages varied greatly. The current president of Manatt's testified Joe "disrupted [Manatt's] mine plan, [Manatt's] future

mine plan, and [has] taken away all the reserves that are underneath the Plath property." The Manatt's prospector testified the opportunity to purchase the Plath parcel was a "once a generation" opportunity but that without it, Manatt's still has sufficient sand to fuel current operations until 2079. A mineral appraiser and geologist hired by Manatt's valued the sand reserves on the Plath property at $1.6 million, and that due to setback rules Manatt's would lose $800,000 worth of sand and gravel that could not be mined on the boundary separating the C.G. Lee and Plath parcels.

Based on the evidence presented at trial, the jury could find either that Manatt's was not damaged because of the length of time the sand could sustain their operations or that Manatt's was damaged and use the evidence presented by Manatt's to guide its damage calculation. It was Manatt's burden to prove its damages, not Joe's or Tanam's burden to prove there were no damages. We agree that the verdicts were inconsistent and could not be harmonized in accordance with the evidence.

C.      Cross Appeal: Scope of New Trial

Manatt's argues the district court properly granted its motion for a new trial, but erred in setting its scope. The district court granted a new trial on both the breach-of-fiduciary-duty and damages claims. Manatt's argues on appeal that only damages should be argued at the new trial.

"The general rule is that when a new trial is granted, all issues must be retried." *Bryant v. Parr*, 872 N.W.2d 366, 380 (Iowa 2015) (quoting *McElroy v. State*, 703 N.W.2d 385, 389 (Iowa 2005)). The retrial scope may be limited if "it should appear that the issue to be tried is distinct and separable from the other

issues, and that the new trial can be had without danger of complications with other matters." *Id.* (quoting *Larimer v. Platte*, 53 N.W.2d 262, 267. 268 (Iowa 1952)). On review of a motion for a new trial in a personal-injury case, this court has said "as a general rule, new trials will be granted as to the whole case and on all of the issues, and seldom on the issue of damages only, except where liability of a defendant is definitely established." *Henson v. City of Davenport*, No. 12-0698, 2012 WL5951365, at *4 (Iowa Ct. App. Nov. 29, 2012).

In this case, Manatt's asks that we remand solely for retrial on the issue of damages. However, a jury may conclude again on retrial that no damages were sustained. Thus, that determination of the damage award could also be dispositive of the breach-of-fiduciary-duty claim because a calculation of damages sustained due to the breach is a required element. Thus, we find the district court appropriately applied the general rule and granted retrial on the breach-of-fiduciary-duty claim, which necessarily includes damages. *See id.*

## IV. Conclusion

On our review of the record, we find there was substantial evidence to support the district court's denial of Joe's and Tanam's motion for directed verdict on the breach of fiduciary claim. We also find the answers provided on the verdict form were inconsistent and cannot be harmonized in accordance with the evidence presented at trial. Finally, the breach-of-fiduciary-duty and damages issues are not so distinct and separable to warrant retrial solely on damages.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**