Duane N. ROLING and Judy
M. Roling, Appellants,

v.

Kirk DAILY, Administrator of the Estate of Russell Glenn Taylor, Deceased, and Allan C. Orsborn, Administrator of the Estate of Betty Mae Pressler, Deceased, Appellees.

No. 97–1925.

Supreme Court of Iowa.

July 8, 1999.

Stephen J. Juergens of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellants.

Michael J. Moreland and Timothy J. McKay of Lynch, McKay, Moreland & Webber, P.C., Ottumwa, for appellee Kirk Daily.

Patrick L. Woodward of McDonald, Stonebraker & Cepican, P.C., Davenport, for appellee Allan C. Orsborn.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

To date we have subscribed to the prevailing view that a tort recovery for emotional distress will be allowed only if accompanied by some physical injuries. It is also necessary, for such a recovery, to establish by expert medical testimony a causal connection between the defendant's fault and the claimed emotional distress. A second causal connection is not however required between the plaintiff's physical injuries and the emotional distress. Because the trial court based its grant of judgment notwithstanding the verdict on the second requirement, we reverse and remand.

The trial court selected the perfect word in describing the accident as "horrific." Duane Roling was driving a 60,000 pound semi-truck for H&W Motor Freight. A car owned by Betty Pressler and occupied at the time by her and Russell Taylor (it is disputed which of the two was driving) crossed the centerline and struck Roling's truck. Pressler and Taylor were both killed instantly. The truck tractor was destroyed and the trailer was severely damaged. Pressler's vehicle virtually disintegrated.

Roling declined medical treatment at the scene but within a few days it became obvious he had been injured. This is not surprising. Although he was wearing a seat belt, the impact caused his head to strike the headliner of the tractor cab. His knees flew up and struck the steering mechanism forcefully. He moved enough forward to contact the steering wheel with his rib area. When Roling's injured physical condition manifested itself a few days after the accident, he went to the Dubuque office of the H&W company physician. The doctor took Roling off work and directed him to come back the following week. X-rays and later physical examinations revealed that Roling suffered the following physical injuries, none of which were present prior to the collision:

(1) bump and cuts on the top of his head;

(2) bruises on the back of his head and the side and back of his neck;

(3) stiff neck;

(4) sore chest and ribs, upper right side and left side of back;

(5) fractured or cracked ribs on the left side;

(6) fractured and swollen right thumb; and

(7) bruised legs from the knees to the ankles.

Damage to Roling's emotional well-being was far more extensive than his comparatively modest physical injuries. A healthy, well-adjusted individual with many years driving experience, he had never previously had an accident and was in shock following the collision. He went to where he saw Pressler lying on the highway and observed she was dead. He then saw Taylor lying in the ditch and went to him and observed he also was dead. Roling saw that Taylor's body was "terribly mangled." On observing this, Roling felt weak and sick to his stomach. In the days that followed, depression, mood change and flashbacks ultimately caused Roling to consult Barbara Woodward, a clinical psychologist in Dubuque. She treated him off and on for approximately two and one-half years.

Roling brought this suit against the estates of both Pressler and Taylor. Roling's wife, Judy, filed consortium claims against both estates. The defendants conceded fault but denied causation and the claims for damages. Following the Rolings' evidence, the defendants' motions for directed verdicts were overruled. The defendants offered no evidence and the case was submitted to the jury which returned a verdict for Duane in the amount of $151,186 and awarded $12,000 on Judy's consortium claim. Both defendants filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court entered judgment notwithstanding the verdict (and accordingly did not reach the motion for new trial), holding "it must be shown that the damage came or arose out of the accident; further, the injury preceded the emotional distress; *the injury was significantly related to the emotional distress;* and the items of damage naturally ensued." (Emphasis added.) The matter is before us on the Rolings' appeal.

■■■ We review a judgment notwithstanding the verdict on error. *Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 541 (Iowa 1997). The question is whether the evidence, when viewed in the light most favorable to the plaintiffs, was sufficient to generate a jury question. *Nesler v. Fisher & Co.,* 452 N.W.2d 191, 193 (Iowa 1990).

■■■ I. The defendant estates' initial challenge is to the sufficiency of the evidence to establish a causal connection between their admitted fault and Duane's physical injuries. This challenge rests on

their claim that this connection must be established by expert medical testimony.

■ The estates cite workers' compensation cases in support of this contention. *See Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995) (whether injury has a direct causal connection is especially within the domain of expert testimony); *Koeller v. Reynolds*, 344 N.W.2d 556, 559 (Iowa App.1983) (claimant not qualified as expert in diagnosing physical condition or determining its cause). The estates have a point, but it fails to rescue their position here. We do not indiscriminately impose a requirement for expert testimony in order to establish an element for tort recovery. *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 14 (Iowa 1999) (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962)). We see no reason to require expert testimony in order for the Rolings to establish that Duane was physically injured as a result of the accident. We believe he clearly carried his burden on the point.

■ II. We agree that expert medical testimony should be required to establish his emotional damages, and that they resulted from the accident. The Rolings' evidence established to the jury's satisfaction that Duane's experience in the accident had a profound psychological effect on the quality of his life. The point was established by Duane's own testimony, and that of Judy, but most especially by that of Barbara Woodward. Woodward testified that, in her professional opinion, the accident of May 9, 1994, directly caused Roling's major depressive disorder and post-traumatic stress disorder. In her opinion the marital difficulties of the Rolings (hereinafter mentioned) were caused by Duane's psychological dysfunction resulting from the accident.

Woodward holds a Ph.D. in clinical psychology and has practiced many years in that profession. She noted that Roling was suffering from a major depressive disorder, and felt he was at risk for a full-blown episode of post traumatic stress disorder (PTSD). Testifying as an expert witness for Roling, Woodward explained that PTSD occurs after a person has experienced a highly unusual, terrifying, and traumatic event such as a serious car accident. Persons affected with PTSD respond to the initial trauma with fear, anxiety and distress. Because with both depression and PTSD the individual's psychological defenses are weakened, the patient is less able to cope with the normal stresses of everyday life.

For the next eleven months Roling went progressively downhill emotionally. He brooded constantly about the accident. His personality continued to reflect change. Previously a friendly and social person, he became a loner. He became irritable and argumentative. Although the marriage has survived, Judy at one time was driven to file a dissolution petition.

Woodward's final diagnosis confirmed her original impression that Roling suffered a major depressive disorder and also PTSD. His progress, even with a prescriptive drug regimen on a daily basis, has been uneven. Roling has continued to experience significant changes in his daily functioning, in his personality, and in his mood. Although his PTSD symptoms "should recede over time," sixty percent to eighty-five percent of the people who suffer one major depressive episode will experience another. In that event Roling will again require extensive psychotherapy and prescription medication.

■ III. Under the prevailing view, damages for negligent infliction of emotional distress are usually denied unless *accompanied* by some physical injury to the plaintiff. *Lawrence v. Grinde*, 534 N.W.2d 414, 420 (Iowa 1995); *Millington v. Kuba*, 532 N.W.2d 787, 792–93 (Iowa 1995); *Niblo v. Parr Mfg., Inc.*, 445

N.W.2d 351, 354 (Iowa 1989).[1] We have recognized exceptions to this requirement in circumstances not implicated here. *See Oswald v. LeGrand,* 453 N.W.2d 634, 639–40 (Iowa 1990) (medical professionals have a duty to exercise ordinary care to avoid causing emotional harm to patient); *Barnhill v. Davis,* 300 N.W.2d 104, 107–08 (Iowa 1981) (allowing recovery for emotional harm to bystander witnessing serious injury or death to close relative).

■ The defendant estates contend that expert medical testimony was required to establish a claim of emotional injuries, specifically to establish the causal connection between their negligence (conceded in this case) and those emotional injuries. We agree. But, under the facts we have recited, taken from the record in the light most consistent with the verdict, we think the Rolings have clearly carried this burden.

■ Medical testimony should be required to establish emotional distress, not only because of its technical nature, but also because of the limited scope of allowable recovery. It must be remembered that damages are not recovered because one has experienced a horrific event, no matter how wrenching. The recovery is not for the event itself, but for the impact the event is shown to have had in terms of the later emotional condition of the claimant. The estates fail on the point,[2] not because there is no requirement, but because Dr. Woodward's testimony alone clearly satisfied it.

For the foregoing reasons judgment notwithstanding the verdict should not have been entered against the Rolings. That judgment must be reversed.

■ IV. The trial court did not reach the estates' motions for new trial because they became moot when the court entered judgment notwithstanding the verdicts. On appeal the estates urge that, if the judgment is to be-as it has been-reversed, we should alternatively order a new trial.

■■ Our scope of review of a ruling on a motion for a new trial depends on the grounds asserted in the motion. To the extent the motion is based on a discretionary ground, we review it for an abuse of discretion. But if the motion is based on a legal question, our review is on error. *Ladeburg v. Ray,* 508 N.W.2d 694, 696–97 (Iowa 1993). In discretionary matters, the trial court is accorded broad but not unlimited discretion. *Benson v. Richardson,* 537 N.W.2d 748, 762 (Iowa 1995). The estates have pointed out no legal error in the trial or submission of the case. But we have no trial court ruling on the motions for new trial subject to our review. The case must be remanded in order for the trial court to consider and rule upon any discretionary grounds in the new trial motions.

## REVERSED AND REMANDED.

1. The rule requiring an accompanying physical injury is not without its critics. *See Lawrence,* 534 N.W.2d at 423–25 (Carter, J., dissenting) (citing William L. Prosser, *Law on Torts* § 54, at 328 (4th ed.1971)); *Molien v. Kaiser Found. Hosp.,* 27 Cal.3d 916, 167 Cal. Rptr. 831, 616 P.2d 813, 820 (1980) (rejecting unqualified requirement of physical injury); *Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096, 1102 (1976) (defendant owes a duty to avoid the negligent infliction of emotional distress, therefore it is unnecessary that there be any physical impact or threat of immediate physical invasion of the plaintiff's personal security). The rule requiring some accompanying injury is not challenged here, so we have no occasion to revisit the point.

2. The estates might be misled by the requirement of a physical manifestation of emotional distress for recovery under *Barnhill.* "While we recognize that mental distress may exist without objective physical symptoms, compensable mental distress should ordinarily be accompanied with physical manifestations of the distress." *Barnhill,* 300 N.W.2d at 107–08. The physical manifestation requirement under *Barnhill* has nothing to do with the threshold "accompanying physical injuries" requirement. The manifested physical injuries required in *Barnhill* are those that must flow from the emotional distress. The accompanying physical injuries required as a threshold are those that result directly from the accident.