# IN THE COURT OF APPEALS OF IOWA

No. 13-1911
Filed February 11, 2015

**RAVI SOOD, M.D.,**
      Plaintiff-Appellee/Cross-Appellant,

**vs.**

**MICHAEL M. GRAHAM,**
**Ph.D., M.D., Director of Nuclear**
**Medicine for the University of**
**Iowa Carver College of Medicine**
**and Individually,**
      Defendant-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Carl Baker, Judge.

A state employee appeals from a judgment that he violated the due process rights of another employee. The prevailing employee appeals from the order granting attorney's fees and costs. **REVERSED AND REMANDED AS TO APPEAL; CROSS-APPEAL DISMISSED.**

Thomas J. Miller, Attorney General, and George A. Carroll and Jordan G. Esbrook, Assistant Attorneys General, for appellant.

Chad A. Swanson and Laura J. Folkerts of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellee.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

Michael Graham, Director of Nuclear Medicine for the University of Iowa Carver College of Medicine, appeals from a district court ruling that he violated the due process rights of Ravi Sood when he revoked Sood's clinical privileges at the University of Iowa Hospitals and Clinics. Graham contends that Sood's due process claim fails as a matter of law; that Graham was entitled to qualified immunity; and that the district court awarded fees that are not statutorily compensable. Sood cross-appeals contending the district court erred in its award of attorney fees. We reverse the ruling of the district court, vacate the fees award, and remand for further proceedings.

**I.      BACKGROUND FACTS AND PROCEEDINGS.**

This court previously heard this case on appeal from a grant of partial summary judgment in the case of *Sood v. University of Iowa*, No. 13-0870, 2014 WL 1234210 (Iowa Ct. App. March 26, 2014). In deciding that appeal, we made the following findings of fact:

> In a letter dated July 14, 2008, the department of radiology of the University of Iowa Carver College of Medicine offered Ravi Sood a "full-time non tenure-track appointment as a Visiting Associate for the period of one year beginning July 14, 2008" with an annual salary of $100,000. The letter also stated, "You will have full clinical privileges in Nuclear Medicine," and "your appointment may be renewed for one additional year." Sood accepted the offer on July 17, 2008.
> On June 28, 2008, Sood applied for "initial" clinical privileges for University of Iowa Hospitals and Clinics' (UIHC) radiology department. He began working at the University as a visiting associate in July 2008. On October 1, 2008, the University Hospital Advisory Committee granted Sood full clinical privileges "subject to the conditions specified in the Bylaws, Rules and Regulations of the University of Iowa Hospitals and Clinics and its Clinical Staff." According to the Bylaws, "[a]ll initial clinical privileges shall be

provisional for the first three months"; and "[i]f . . . termination[ ] of clinical privileges is recommended, the recommendation shall be handled as provided in Section 6."

On October 28, 2008, Sood was informed by a letter authored by Michael M. Graham, Ph.D., M.D. (Director of Nuclear Medicine for the Carver College of Medicine at the University of Iowa) that Graham "propose[d] that we reduce your status to that of fellow without clinical privileges, although you will retain the title of 'clinical fellow' and current salary." The letter noted, "[W]e will not be renewing your appointment after June 30, 2009."

Also on October 28, Dr. Graham told Nancy Harney of human resources that he no longer wanted Sood to have clinical privileges. Harney emailed Graham's request to Deb Strabala in the clinical staff office, July Harland in [the] business office, and Tyler Artz, the director of the radiology department, that they "need[ed] to make a change in the status of Ravi Sood, M.D., effective immediately."

In a letter dated November 3, Sood was informed that his "appointment in the Department of Radiology ended on October 31, 2008. In accord with the 'Bylaws of the [UIHC] and its Clinical Staff,' your clinical staff membership and privileges at the [UIHC] also end on the same date."

On November 26, 2008, Sood again applied for "initial" clinical privileges for the UIHC radiology department, which were granted by the University Hospital Advisory Committee on January 7, 2009. Sood's employment with the University ended June 30, 2009. Sometime in June 2009, Sood learned that an application he had submitted for employment elsewhere was no longer being processed due to a "gap" in his privileges.

On January 22, 2010, Sood filed a petition against the University of Iowa, the Board of Regents, and Dr. Graham, alleging . . . breach of contract [and] violation of procedural due process.[1]

The UIHC Bylaws, Rules, and Regulations Article IV, sections 4-6 govern clinical privileges including application for, reduction of, and corrective action in relation to such privileges. The Bylaws outline the procedure for corrective action, which includes provisions for notice, a hearing, and appellate review.

---

[1] A third claim for violation of Iowa Code section 91A.6 (2009), a provision of the Iowa Wage Payment Collection Law, was dismissed prior to the motion for summary judgment.

Both Graham and Sood were aware of the Bylaws and their obligation to abide by them.

The University Operations Manual Chapter 29 provides a grievance procedure for faculty members wishing to challenge the legitimacy of university action.[2] Chapter 31 of the operations manual provides for review of any final decision of an adjudicative or rule-making body at the university by the board of regents. This chapter also provides that, following a decision by the board of regents, the employee may seek judicial review.

The University of Iowa, the board of regents, and Graham filed a motion for partial summary judgment on Sood's claims arguing, among other things, that they were entitled to qualified immunity against the procedural due process claim. The district court granted the motion, finding the university and the board were entitled to qualified immunity, and Graham was entitled to qualified immunity in his official capacity. However, it denied partial summary judgment on the question of whether Graham was entitled to qualified immunity in his individual capacity. It found there were genuine issues of material fact remaining as to whether Graham intended to have Sood's clinical privileges terminated.

On a second motion for summary judgment, the court dismissed the breach-of-contract claim against all parties due to Sood's failure to exhaust available administrative remedies. In the previous appeal before us, we affirmed the district court's grant of summary judgment on Sood's breach-of-contract claim. *Sood*, 2014 WL 1234210 at *7.

---

[2] We note that the UIHC Bylaws specifically exclude actions concerning clinical privileges from the procedures under the Chapter 29 of the Operations Manual.

Sood's due process claim against Graham in his individual capacity proceeded to trial. At the close of evidence, Graham moved for directed verdict on multiple grounds, including that Sood failed to pursue available administrative remedies. The court denied this motion. The court submitted special verdict questions to the jury, and the jury concluded Graham had violated Sood's constitutional due process rights and awarded Sood $37,000 in damages. The court entered judgment accordingly. Graham next filed a combined motion for judgment notwithstanding the verdict (pursuant to Iowa Rule of Civil Procedure 1.1003(2)) and new trial (pursuant to Iowa Rule of Civil Procedure 1.1004(8)). This motion raised numerous issues, including again that Sood failed to pursue available administrative remedies. The district court denied this motion. Graham appeals from this ruling.

Following the judgment in his favor, Sood submitted a motion for attorney fees, including itemized bills and affidavits in support of the claim. Sood requested the court enter judgment against Graham for $242,648.25 in attorney fees and $35,828.92 in costs and expenses. The court awarded Sood $120,000 in attorney fees and $25,283.03 in expenses. Sood cross-appeals from this award.

Following entry of all post-trial rulings, this court filed its opinion in the appeal taken from denial of the motion for partial summary judgment. *Sood*, 2014 WL 1234210. With respect to the breach-of-contract claim, we found that Sood failed to exhaust the administrative remedies available to him and denied the appeal. *Sood*, 2014 WL 1234210 at *7.

## II.   ANALYSIS.

### A.   Procedural Due Process Claim.

Graham contends Sood's procedural due process claim fails as a matter of law.   He asserts Sood waived his due process claim by failing to seek administrative remedies.   He suggests Sood could have used the administrative procedures set out in Iowa Code chapter 17A (2007), or the internal University procedures set out in the bylaws and the university operations manual.

We review the denial of a motion for new trial based on the grounds asserted in the motion.   *Roling v. Daily*, 596 N.W.2d 72, 76 (Iowa 1999).   If the motion is based on a discretionary ground, we review it for an abuse of discretion.   *Id.*   If the motion is based on a legal ground, our review is for correction of errors at law.   *Id.*   Graham contends Sood's claim failed as a matter of law, therefore, we review for correction of errors at law.

Generally, "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states such a claim under § 1983."   *Wax n' Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). In *Christiansen v. West Branch Community School District*, 674 F.3d 927, 935 (8th Cir. 2012), the Eighth Circuit Court of Appeals explained that "a government employee who chooses not to pursue available post-termination remedies cannot later claim, via a § 1983 suit in federal district court, that he was denied post-termination due process."   However, "it is not necessary for the litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process."   *Christiansen*, 674 F.3d at 936 (internal

quotation omitted).  Sood claims he was denied *predeprivation* process when Graham ordered the termination of his clinical privileges without notice or a hearing.  As such, he asserts he was not required to exhaust administrative remedies prior to bringing the section-1983 action.

Sood insists that although he received the letter from Graham on October 28 informing him of the corrective action that would take place, he did not know his clinical privileges had been terminated on October 31 until he was informed in writing on November 3.  Sood understood or should have understood, upon receipt of the October 28th letter, that a termination of his privileges was being proposed.  The UIHC bylaws govern corrective actions related to clinical privileges and provide for notice, a hearing, and review.  He had time and opportunity between October 28 and the termination on October 31 to invoke—or at least attempt to invoke—the administrative procedures provided in the university's bylaws.  We find there was adequate pre-deprivation process available of which Sood did not avail himself.

Even if we were to determine Sood did not have access to pre-deprivation process, "[d]ue process does not require elaborate pre-termination procedures, especially where meaningful post-termination process is available." *Christiansen*, 674 F.3d at 934.  The record before us discloses that there was extensive post-termination process available to Sood including the procedure regarding clinical privileges outlined in the UIHC bylaws, article IV, sections 4-6.  Sood then had the right to grieve under the university operations manual chapter 31.  He had the right to appeal to the board of regents and still later to petition for

judicial review. Sood never invoked any post-deprivation administrative procedures.

Sood insists the predeprivation procedures were inadequate because they do not provide a remedy for a gap in clinical privileges. In our earlier case, we affirmed a district court ruling that Sood's breach-of-contract claim failed because he had not exhausted administrative remedies. With regard to the gap issue, we explained:

> [Sood] contends for example, that there is no remedy to the reporting gap of his privileges. His attempt is to no avail. Any alleged breach of the contract must be measured by all of the facts. *If Sood had administratively challenged the University's revocation of his clinical privileges, and if successful in that challenge, we know of no reason why his work history would reflect a gap in his privileges or the full salary not paid.*

*Sood*, 2014 WL 1234210 at *7 (emphasis added).

We are constrained by our ruling in the breach-of-contract case. The remedy sought in the due process claim is for damages arising out of the gap in privileges. That is the same gap we already determined was subject to remediation through an administrative appeal. Accordingly, the due process claim must be dismissed for failure to exhaust administrative remedies. Therefore, we need not address any of the remaining issues on appeal barring the fees and expenses award.

**B.    Attorney Fees and Expenses Award.**

Because we find Sood's due process claim is dismissed, we need not address the parties' arguments regarding the attorney fees and expenses award. We vacate the order awarding fees and expenses and dismiss the cross appeal.

**III.    CONCLUSION.**

We conclude, consistent with our prior opinion in this case, that Sood's claim is dismissed for failure to exhaust both predeprivation and postdeprivation administrative remedies.  Consequently, we do not address the parties' other arguments.  We vacate the order awarding fees and expenses and dismiss the cross-appeal.  We remand to the district court.

**REVERSED AND REMANDED AS TO APPEAL; CROSS-APPEAL DISMISSED.**