**IN THE COURT OF APPEALS OF IOWA**

No. 22-1861
Filed January 24, 2024

**RICHARD GERDTS,**
    Plaintiff-Appellant,

**vs.**

**DONAN ENGINEERING CO., INC., and LANCE L. LETELLIER, P.E.,**
    Defendants-Appellees.
_____

    Appeal from the Iowa District Court for Scott County, John Telleen (partial dismissal) and Stuart P. Werling (summary judgment), Judges.

    The plaintiff appeals the grant of motions to dismiss and for summary judgment. **AFFIRMED.**

    James C. Larew and Claire M. Diallo of Larew Law Office, Iowa City, for appellant.

    Eric G. Hoch and Kevin J. Driscoll of Finley Law Firm, PC, Des Moines, for appellees.

    Heard by Tabor, P.J., Badding, J., and Blane, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BLANE, Senior Judge.**

Homeowner Richard Gerdts appeals the grant of Donan Engineering Co., Inc. and Lance LeTellier's[1] motions to dismiss and for summary judgment related to denial by his insurance company of his claim for hail damage to the roof of his duplex. Gerdts appeals three of those rulings.[2] We affirm for the reasons discussed below.

## I. Facts and prior proceedings

Gerdts owns half of a duplex in Bettendorf. In April 2020, Gerdts's neighborhood experienced a hailstorm. As a result, many of Gerdts's neighbors had their roofs replaced, including the owner of the other half of Gerdts's duplex, who had a homeowner's policy with a different insurance carrier.

Gerdts made a claim to the Property and Casualty Insurance Company of Hartford (Hartford), his insurer, for the hail damage to his portion of the roof. Hartford claims representative, Daryl Holmes, hired an adjusting company, Ladder Now, to inspect the roof. Ladder Now reported to Hartford that there was hail damage to roof vents and the furnace cap, all made of plastic or soft metal, but not to the roof shingles. Holmes determined that the damage cost to the roof vents and furnace cap was below Gerdts's deductible. So he denied the claim for roof shingle replacement. In response, Gerdts hired an independent adjuster and a

---

[1] We will refer to the defendants as "Donan" except when it is necessary to specifically refer to LeTellier.

[2] While Gerdts raised other claims against the insurance company (breach of contract, bad faith, fraudulent misrepresentation, conspiracy, negligence, and negligent misrepresentation) and Donan (tortious interference with contract, fraudulent misrepresentation, equitable fraud, constructive fraud, conspiracy, negligence, and negligent misrepresentation), we limit our discussion to the claims raised on appeal.

roofing contractor[3] and had them inspect the roof. Both opined that there was hail damage and the roof shingles should be replaced. Gerdts communicated this to Hartford in support of his claim, so Holmes then retained Donan to perform another inspection. Hartford issued the following "scope of work" to Donan: "Inspect roof for cause of damage. Include test squares on each slope and advice on reparability vs replacement." Donan assigned the case to its employee, Lance LeTellier, a licensed civil engineer in Cedar Rapids.

LeTellier did a site visit, took pictures of what he observed on the roof, and reported the following summary of his conclusions: "The roof is not damaged by hail impact. Man-made damage, balding, age-related deterioration, and nail pops are on the roof." He submitted his report and photographs to Hartford. He also submitted various literature about hail damage and the types and sizes of hail expected to cause significant damage to roof shingles. He testified in deposition that hail of the size that could cause roof damage did not appear in Gerdts's area at the time of the storm.[4] He further testified that to find hail damage, he would look for a fracture of the shingle that "affects the water-shedding ability of that shingle" or a "bruise" to the shingle. A "bruise" is "an indentation that extends through the entire premise of the shingle." He stated, "Those are the two primary determinations of hail damage situations." Donan and LeTellier were not provided

---

[3] The same roofer who had inspected the other half of the duplex.
[4] LeTellier relied on National Oceanic and Atmospheric Administration (NOAA) records and weather reports.

a copy of Gerdts's insurance policy with Hartford. Based on Donan's report, Holmes determined again to deny Gerdts's claim.[5]

Gerdts filed suit against Hartford, Donan, and LeTellier. Donan filed a pre-answer motion to dismiss. The court dismissed Gerdts's negligence claim but declined to dismiss the tortious-interference, third-party-beneficiary and conspiracy claims. After discovery, Donan moved for summary judgment. The court granted Donan's summary judgment motion and dismissed the remaining claims. Gerdts appeals the dismissal of the negligence claim and the summary judgment and dismissal of the tortious-interference and third-party-beneficiary claims.

## II. Standards of review

"We review a district court's ruling on a motion to dismiss for the correction of legal error." *White v. Harkrider*, 990 N.W.2d 647, 650 (Iowa 2023). "A motion to dismiss challenges a petition's legal sufficiency." *Id.* (quoting *Meade v. Christie*, 974 N.W.2d 770, 774–75 (Iowa 2022)). On our review, we accept the facts alleged in the petition as true and take the allegations in the light most favorable to Gerdts as the plaintiff. *Id.* In general, appellate courts disfavor motions to dismiss versus summary judgment proceedings or trial. *See Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 296 (Iowa 2020). To get dismissal, the petition must show the claim is legally deficient and the plaintiff has no right of recovery as a matter of law. *White*, 990 N.W.2d at 650.

---

[5] Not wanting to hold up the re-roofing of the duplex, Gerdts paid out of pocket to replace his half of the roof. He then sought indemnification from Hartford.

We review summary judgment rulings for correction of legal error. *Morris v. Legends Fieldhouse Bar and Grill, LLC*, 958 N.W.2d 817 (Iowa 2021). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019); *accord* Iowa R. Civ. P. 1.981(3) (requiring court to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when deciding motion for summary judgment). "A genuine issue of fact exists if reasonable minds can differ on how an issue should be resolved." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018) (citation omitted). And "[a] fact is material when it might affect the outcome of a lawsuit." *Id.* Gerdts, as the opponent of summary judgment, may not rest on the allegations in his pleading but must lift up specific facts showing the existence of a genuine issue for trial. *See Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005). We view the evidence in the light most favorable to Gerdts. *See Banwart*, 910 N.W.2d at 545. And we accept every legitimate inference we can reasonably draw from the record. *Hedlund*, 930 N.W.2d at 715. But "speculation is insufficient to generate a genuine issue of fact." *Hlubek*, 701 N.W.2d at 98.

## III. Analysis

Gerdts appeals the dismissal of his claim for negligence and the grant of summary judgment on his tortious-interference and breach-of-contract claims. We start with negligence.

## A. Negligence

We first address whether the claim in question is negligence or "professional negligence," as Gerdts captions it in his appeal brief. Donan responds that Gerdts did not plead "professional negligence," so any claim derived from that pleading is not preserved for appeal. Looking at the petition and amended petitions, Gerdts captioned the claim as "negligence" against Hartford, Donan, and LeTellier. The substance of the claim includes that the defendants, including Hartford, breached a duty to handle the insurance claim process with "reasonably competent professional claims adjustors and, if retained by the insurer, professional engineers." We read this claim to mean a breach of a general duty, not a professional duty. Thus the claim is for general negligence.

Here, as in any negligence claim, Gerdts must show the applicable duty of care, a breach of that duty, proximate cause, and damages. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009). Whether a duty arises is "a matter of law for the court's determination." *Id.*

The district court found Gerdts had no right of recovery for negligence, whether or not he could show those grounds, under the economic loss rule. That rule says "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011) (citation omitted). In other words, "there is no recovery in negligence for pure economic loss, that is, for economic loss unrelated to injury to the person or the property of the plaintiff." *Id.* (citation omitted). The rule is meant to prevent parties litigating in tort what should be litigated in contract where, presumably, the

parties "have allocated [expectations of the contractual relationship] between themselves in their contract." *Id.*

Where, as here, the parties do not have "direct contractual privity," we apply the "stranger economic loss rule" based on similar principles. *Id.* at 504. The supreme court has recognized exceptions to the rule for professional negligence claims against attorneys and accountants. *Id.* Responding to the dismissal motion, Gerdts argued that engineers should be recognized as a further exception. The district court said:

> In the current case, Plaintiff alleges purely economic losses against the Donan Defendants but urges the Court to adopt an exception to the economic loss rule for engineers. The Court finds the unpublished Iowa Court of Appeals case *Ziel v. Energy Panel Structures, Inc.*, cited by the Donan Defendants, persuasive on the issue. [No. 19-0508,] 2020 WL 4498064 (Iowa Ct. App. Aug. 5, 2020). In *Ziel*, the appellant in a negligence suit against an engineering firm argued that the professional negligence exception permitted suit against the firm for purely economic loss. The Iowa Court of Appeals rejected that argument, noting that "no case has exempted engineering negligence from the economic loss rule." The Court likewise finds that there is no authority to support an exemption from the economic loss rule for engineers, and declines to extend the doctrine on its own recognizance. Plaintiff argues that the loss alleged against the Donan Defendants is not purely economic because the Report caused a delay in the repair of his property. This argument is without merit. Plaintiff does not claim that the Donan Defendants caused the hail damage. Rather, Plaintiff is alleging that the Donan Defendants interfered with his contractual rights to receive indemnification from the Hartford. "[S]ome losses are encompassed by contract law principles and others by tort law principles." "When . . . the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown, or nonaccidental cause, the remedy lies in contract." Plaintiff's claims derive from his disappointed expectation that the Hartford would indemnify a loss otherwise solely attributable to natural forces. This is an economic loss. Because the Court finds that the economic loss rule applies, Plaintiff's claim of Negligence against the Donan Defendants must be dismissed.

(Citations omitted).

On appeal Gerdts raises two challenges to the district court's ruling. First, he contends the court erred in finding Donan did not owe a duty of care to Gerdts.[6] Second, he renews the contention that the economic loss doctrine does not apply to his claim because he did not have a contract with Donan and, unlike *Ziel*, the court did not find there was no duty between the parties. *See* 2020 WL 4498064, at *4–5.

Like the district court, we find that Gerdts is claiming a purely economic loss. In determining whether the doctrine applies, the supreme court has focused on "the nature of the defect, the type of risk, and the manner in which the injury arose as well as the type of damages that the plaintiff seeks to recover." *Annett Holdings, Inc.*, 801 N.W.2d at 506 (edited for readability). On appeal, Gerdts is not claiming that Donan created any injury to the roof during the inspection. Rather, he claims the inspection and report caused Hartford to decline coverage under the insurance policy to reimburse Gerdts for the cost of replacing the roof. And he says the nature of the defect is "a concentrated effort by the Donan Defendants . . . to deny property damage claims." He equates this to a "physical consequence." Still, the remedy sought is reimbursement for the cost of replacing his roof, which Hartford refused to pay. So the economic loss doctrine applies whether or not there is a duty between the parties or a contract—Gerdts cannot succeed in a negligence claim for this loss.

---

[6] Both parties seem to assert that the court's finding that there is no duty of care is implied but not explicit. Donan asserts that because it was raised to the district court as an alternative ground, we can still address it on appeal. We choose to bypass this concern because the economic loss issue is independently dispositive of the negligence claim on appeal.

But Gerdts insists engineers like Donan and LeTellier should be exempted from the rule, like lawyers and accountants. The district court cited *Ziel* stating, "No case has exempted engineering negligence from the economic loss rule." *Id.* at *6. This is still a correct statement.[7] But Gerdts claims reliance on *Ziel* was erroneous because Ziel failed to argue professional negligence below and the court did not directly address whether engineers should be exempted. Gerdts argues that the purpose of the economic loss rule does not apply here because he has no contract with Donan so there is no inappropriate resort to tort.[8] He points to *Pitts v. Farm Bureau Life Ins. Co.*, where the supreme court suggested the exception could be extended to insurance agents, in addition to attorneys and accountants. 818 N.W.2d 91, 98 (Iowa 2012). But the *Pitts* court pointed out Farm Bureau did not raise the economic loss rule as a defense. *Id.* at 98 n.4. Still, the court agreed that features of that case, involving the conduct of an insurance agent, "may place it outside the scope of the economic loss rule." *Id.* The court identified the absence of a "chain of contracts" connecting the parties, that the claim was not as "remote" as other claims, and the "direct cause of loss suffered" by the plaintiff through the defendant's conduct. *Id.* Those features do not arise in Gerdts's case.

---

[7] In *Even v. Title Servs. Corp.*, No. 21-0727, 2022 WL 2348189, at *3 (Iowa Ct. App. June 29, 2022), we found there was no duty of care in a negligent representation action. One party raised the economic loss doctrine in defense, and we determined that their claim was negligent misrepresentation rather than general negligence. 2022 WL 2348189, at *3 n.1. But we noted "no reason to think the outcome of this appeal would be different if we characterized their claims in terms of general negligence instead." *Id.*

[8] We note this is inconsistent with Gerdts's other claims in his petition.

Gerdts also points to claims of professional negligence, which are exempted from the rule. *See, e.g.*, *John T. Jones Constr. Co. v. Hoot Gen. Constr.*, 543 F. Supp. 2d 982, 1009 (S.D. Iowa 2008). Alongside that, he cites other jurisdictions that have suggested or determined engineers are an exception to the economic loss rule.

Still we choose to adhere to the reasoning in *Ziel*. As Donan points out, *Ziel* did not expand the exception to engineers because it found no binding authority to do so. *See* 2020 WL 4498064, at *6 (citing V*an Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 692 n.5 (Iowa 2010) (noting exceptions have been found for attorneys and accountants)). The claimed damages here are purely economic, and the economic loss doctrine bars Gerdts's recovery as a matter of law. So the court did not err in granting Donan's motion to dismiss the negligence claim.

## B. Tortious interference with contract

Gerdts next claims the district court erred in granting summary judgment and dismissing his tortious-interference-with-contract claim. The elements of that claim are (1) Gerdts had a contract with Hartford, (2) Donan knew of the contract, (3) Donan intentionally and improperly interfered with the contract, (4) the interference caused Hartford to not perform or made performance more burdensome or expensive; and (5) damages to Gerdts resulted. *See Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997).[9]

---

[9] As to tortious interference with contract, our supreme court has adopted Restatement (Second) of Torts sections 766 and 767 and applied the restatements comments. See *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 663–64 (Iowa 2008).

Gerdts alleged that "Donan, using licensed engineers, rewrites the terms of insurance policies to narrow definitions of coverage and deny coverage to insureds such as Mr. Gerdts." He also alleges that Donan committed an intentional tort by failing to properly abide by terms that were contractually binding between Gerdts and Hartford. And he asserts his insurance policy with Hartford provided for coverage if there was "property damage" defined as "physical injury to, destruction of, or loss of use of tangible property." The policy does not specifically define "hail damage." He argues that Donan did not apply the "property damage" definition and instead defined hail damage as "loss of functioning and integrity" of roof shingles. On the other hand, Donan argues that its direction from Hartford was to: "Inspect roof for cause of damage. Include test squares on each slope and advice on reparability vs replacement." Thus, Donan argues it was not charged with the duty to determine or give an opinion on policy coverage.

In its motion for summary judgment, Donan focused on the third element of tortious interference, that Gerdts did not have admissible evidence of any "willful and intentional" interference with Gerdts's contract with Hartford. The district court focused on Gerdts's assertion that Donan demonstrated its improper motive by failing to follow business standards and ethical duties of engineers. The district court found Donan's adherence to professional standards was a question that required expert testimony. Because Gerdts failed to put forward an expert witness, he could not prove his case and summary judgment was appropriate. The ruling stated:

> The question of whether the Donan Defendants adhered to professional standards of conduct requires Plaintiff to prove (1) what the standards of professional conduct are for engineers, and (2) that

the Donan Defendants breached this standard. This is not a factual scenario "within the knowledge and experience of an ordinary layperson." Rather, this inquiry "involve[s] technical, scientific issues which cannot be fully understood by the average juror without some expert assistance." "If expert testimony is required to establish the foundational facts and expert testimony is unavailable, then summary judgment is appropriate." Without expert testimony demonstrating that the Donan Defendants' engineering report was actually faulty, there is no evidence that the Donan Defendants improperly interfered with Plaintiff's insurance policy. The Court hereby dismisses Article II, Count I of Plaintiff's Petition, Tortious Interference with Contract.

(Citations omitted.)

On appeal, Gerdts asserts the district court imposed an additional requirement for his tortious-interference-with-contract claim that does not exist.[10] He contends expert testimony would only be necessary if he was trying to prove professional negligence. He makes this assertion despite the fact he continues to claim Donan did not "follow business standards and ethical duties on engineers." He also argues that Donan "used definitions to define the existence—or non-existence—of 'hail damage' that are not included in the Policy to determine property damage caused by hail." Finally, Gerdts asserts Donan improperly

---

[10] The district court reasoned:

Iowa law establishes that engineering is a profession upon which expert testimony is typically required to establish a case for negligence. . . . The Court finds this rationale equally applicable where a party seeks to establish a claim for intentional interference with contract by showing that an expert engineer failed to adhere to the standards of his profession. If this were a professional negligence action, Plaintiff would proceed by establishing "a violation of defendant's standard of care" by showing that the defendant failed to exercise "that degree of skill, care, and learning ordinarily possessed and exercised by members of that profession in good standing in similar circumstances." This is exactly what Plaintiff seeks to do in the current case to demonstrate improper interference.

(Citations omitted.)

aligned with Hartford because Donan's motive "appears to be one of obtaining consistent, compensated work from insurers."

The supreme court has said,

> For purposes of a claim for intentional interference with a contract, the factors used to help determine if the challenged conduct was improper include: 1. The nature of the conduct. 2. The Defendant's motive. 3. The interest of the party with which the conduct interferes. 4. The interest sought to be advanced by the Defendant. 5. The social interests in protecting the freedom of action of the Defendant and the contractual interests of the other party. 6. The nearness or remoteness of the Defendant's conduct to the interference. 7. The relations between the parties.

*Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006). "[C]onduct is generally not improper if it was merely a consequence of actions taken for a purpose other than to interfere with a contract." *Id.* "[A] party does not improperly interfere with another's contract by exercising its own legal rights in protection of its own financial interests." *Berger v. Cas' Feed Store, Inc.*, 543 N.W.2d 597, 599 (Iowa 1996). Rather, there must be substantial evidence that the party's predominant purpose was to cause injury to the plaintiff. *See id.* at 599–600.

Donan's involvement was initiated by Hartford to provide an "independent" assessment whether the roof sustained hail damage and "advice on reparability vs replacement." The only evidence concerning Donan's involvement is Holmes's email to Donan outlining Hartford's directions of what it wanted Donan to do, LeTellier's on-site inspection of Gerdts's roof, and LeTellier's report sent to Hartford. Gerdts does not claim LeTellier's inspection was faulty or that he

misrepresented the physical inspection made of the roof.[11]  It is LeTellier's report and conclusion—that the roof did not sustain hail damage—that Gerdts argues tortiously interfered since that is what Hartford relied on to continue its denial of the insurance claim.  So Gerdts must identify specific facts in the record to show that Donan, in preparing and submitting the report, acted with the improper purpose of interfering with the insurance contract.

In ruling on the summary judgment motion, the district court did not analyze the seven criteria identified in *Green* to determine whether Donan's conduct was improper.  Rather, it latched onto one factor, that Gerdts needed an expert to prove Donan's conduct was improper.  In doing so, we find that the district court indeed adopted an extra element to prove tortious interference.  The decision in *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 14 (Iowa 1999), is instructive.  That case involved a claim of "stray voltage."  The district court granted summary judgment because the plaintiff did not have an expert witness.  The supreme court reversed, holding that while "expert testimony would clearly be *helpful* to fact finders in such a claim, it is not a condition precedent."  *Schlader*, 591 N.W.2d at 14 (emphasis added).  The court contrasted the claim before it with professional negligence cases, where expert testimony is required, before stating:

> Although testimony of witnesses having specialized education and training, or special experience and knowledge, is often admitted into evidence on the ground of necessity, it is not necessarily required merely because a case involves matters of science, special skill, special learning, knowledge, or experience which may be difficult for jurors to comprehend.
>    Causes of action which predicate recovery upon expert testimony are rare.

---

[11] Numerous photographs, including close ups of the roof shingles were attached to the report.

*Id.* (citations omitted); *accord Roling v. Daily*, 596 N.W.2d 72, 75 (Iowa 1999) ("We do not indiscriminately impose a requirement for expert testimony in order to establish an element for tort recovery.").

The determination of whether there is hail damage sufficient to require the insurance company to approve a claim does not require a professional engineer. Not all hail damage claims are resolved solely by professional engineers; they are also approved and denied by insurance companies based upon inspections and determinations made by insurance adjusters and roofers.[12] It is the complexity of professional negligence cases that requires expert testimony. *Schlader*, 591 N.W.2d at 14. Because expert testimony is not required here, the court granted summary judgment on an improper basis. Every legitimate inference that can be reasonably deduced from the evidence should be afforded the nonmoving party. *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). A fact question is generated if reasonable minds can differ on how the issue should be resolved. *Id.*

Donan argues that since its report to Hartford was an engineering analysis that determined "the roof is not damaged by hail impact," for Gerdts to show this conclusion was improper required a professional engineer. However, whether Donan's engineering analysis was improper does not by itself answer the legal inquiry of whether its conduct improperly interfered with the insurance policy between Hartford and Gerdts. It is only one of the *Green/Restatement* factors in

---

[12] After all, Hartford first denied Gerdts's claim based upon the report of independent adjuster, Ladder Now.

determining improper conduct. And it does not absolutely require expert testimony to establish.

We find Gerdts's lack of an expert witness does not require dismissal. But that does not end our inquiry. "If we reverse a district court's decision to grant summary judgment on one ground, . . . we may still affirm the ruling on alternative grounds raised but not ruled on below and subsequently urged on appeal." *Pitts*, 818 N.W.2d at 97 ("Having concluded summary judgment on that ground was in error, we must now turn to the other grounds raised below to determine if they will support granting Farm Bureau's motion for summary judgment."); *see also Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 904 (Iowa 2014) ("We will consider on appeal if 'there is an alternative ground, raised in the District Court and urged on appeal, that can support the Court's decision.'" (quoting *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 811–12 (Iowa 2000))).

Donan's motion for summary judgment regarding the tortious-interference claim argued, "The Donan Defendants are entitled to summary judgment on Plaintiff's tortious interference with contract claim (Article II Count 1) because there is no evidence that the Donan Defendants' alleged conduct constituted willful and intentional interference with the Policy." In its brief in support of the motion, Donan cited *Green* and argued the seven factors discussed in that case.[13] In its appeal brief, Donan again argues *Green* and the seven factors. In both his resistance to Donan's summary judgment motion and in his appeal brief, Gerdts addresses the seven *Green* factors in arguing that Donan acted improperly. Thus, pursuant to

---

[13] These seven factors are found in Restatement (Second) of Torts section 767.

*Pitts*, we are to determine if Donan's motion for summary judgment should have been granted on this alternative ground and will address the seven factors to determine if Donan's actions rise to being improper and, if not, if Donan is entitled to summary judgment.

In addition to the general principles surrounding intentional interference with contract set out above, we find the following instructive in addressing whether conduct was improper as required to prevail. "The intent to interfere with a contract does not make the interference improper." *Green*, 713 N.W.2d at 244. "[C]onduct is generally not improper if it was merely a consequence of actions taken for a purpose other than to interfere with a contract." *Id.* "If the sole motive is a legitimate purpose derived from the law, then any interference is not improper as a matter of law." *Id.* at 245. "[A] party does not improperly interfere with another's contract by exercising its own legal rights in protection of its own financial interest." *Wilkin Elevator v. Bennett State Bank*, 522 N.W.2d 57, 62 (Iowa 1994).

In analyzing these factors, we also find assistance in the comments to Restatement (Second) of Torts sections 766 and 767: "In order for the actor to be held liable, [section 766] requires that his interference be improper. The factors of importance in determining this issue are stated and explained in [section] 767, which must be read closely with [section 766]." Restatement (Second) of Torts § 766 cmt. a. The essential thing is the intent to cause the result. "The rule stated in [section 766] is applicable if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition." *Id.* § 766 cmt. j.

> If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper.

*Id.* (citation omitted).

"Although intentional torts 'are generally poor candidates for summary judgment because of the subjective nature of motive and intent . . . , the rule is not absolute . . . .'" *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 299 (Iowa 1994), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004) (citation omitted). "The party resisting summary judgment 'must set forth specific facts constituting competent evidence to support a prima facie claim.'" *Id.* (citation omitted).

With these in mind, we turn to the seven factors to determine if Donan's conduct was improper.

*1. The nature of the conduct.*

At Hartford's request, Donan conducted an inspection of Gerdts's roof for hail damage and submitted a report of its findings to Hartford. Donan's findings, applying engineering principles, were that the roof did not sustain hail damage that was "functional." Gerdts contends that Donan's conduct was to intentionally and improperly use a definition to describe hail damage that was narrower than the insurance policy definition and thus give Hartford a basis to deny Gerdts's claim. He argues: "The Donan Defendants have not followed business standards and ethical duties of engineers. They have used definitions to define the existence—or non-existence—of 'hail damage' that are not included in the Policy to determine

property damage caused by hail." Gerdts also argued: "the nature of the actor's conduct was, in effect, to rewrite an insurance policy post-loss, by changing the definition of hail damage to functional hail damage, requiring essentially a hole in an insured's home's roof before it can be a covered loss."

There are two problems with Gerdts's argument. First—and here is where the lack of an engineering expert witness comes into play—Gerdts did not have an expert engineer to establish that Donan violated the "business standards and ethical duties of engineers" in submitting its report to Hartford and presented no evidence in resistance to Donan's motion for summary judgment to support this assertion. Second is that Donan was not provided a copy of Gerdts's insurance policy with Hartford, was not provided the policy definition, was unaware of the policy definition, was not asked to apply the policy definition, and was not asked to provide an opinion whether the roof damage observed during the inspection was covered by the policy. Further, the policy does not have a definition for hail damage. There was no *re-write* of the policy. It was still up to Hartford to determine coverage under the policy. All Donan was asked to do was provide a roofer's opinion on the "cause of damage" and "advice on repairability vs replacement." This is what Donan did.

2. *The Defendant's motive.*

Donan argues its motive was to fulfill its agreement with Hartford to complete an inspection, submit a report and supply "test squares on each slope" and "advice on repairability vs replacement." Gerdts argues that Donan's motive was to submit a report that allowed Hartford to deny coverage thus incurring Hartford's favor and

potential future business with Hartford.[14]  We find little evidence in the record to support Gerdts's argument—Donan was not aware of the policy definition and was not requested to give an opinion on whether the damage found during the inspection was covered by the Hartford insurance policy.  Donan submitted a report to Hartford that contained a site study with photographs, applied engineering principles supported by engineering literature to support an "engineering" definition for hail damage.  Gerdts's cannot prove Donan "intentionally" interfered by using a non-policy definition when it did not know and was not asked about a policy definition for hail damage.

3.  *The interest of the party with which the conduct interferes.*

Gerdts's interest is to have Hartford reimburse him pursuant to his insurance policy for the cost of replacing his roof due to hail damage.

4.  *The interest sought to be advanced by the Defendant.*

Donan argues that its interest was to "merely provide[] the services they were retained to provide by the Hartford."  Gerdts contends, "Here, the Donan Defendants acted in a manner solely to protect their own financial interests by, in

---

[14] Gerdts asserts in support of this argument, "Mr. LeTellier issued more than 25 reports for one insurer alone over the course of just two years in eight counties in Iowa."  The partial dissent relies on these documents to support its position.  A review of the record shows the documents were submitted by Gerdts as Appendix II in support of his resistance to Donan's summary judgment.  The documents in that appendix were not part of any pleading, answer to interrogatory, response to a request for admission, deposition or affidavit or exhibit attached to what the court is allowed to consider in ruling on a motion for summary judgment.  *See* Iowa R. of Civ. P. 1.981(3).  We question whether the reports were properly submitted by Gerdts so as to be considered in ruling on the summary judgment motion, although Donan did not challenge their inclusion in the district court proceedings or on appeal.

effect, changing the definitions in a Policy, with the intended result of diminishing or defeating a policyholder's hail loss claim, in order to protect or exercise those interests." We have already determined above that Donan could not have had an interest of "changing the definitions in the policy" when they were unaware of the definition.

5. *The social interests in protecting the freedom of action of the Defendant and the contractual interests of the other party.*

Donan is an engineering firm that is in the business of performing engineering services for clients.

6. *The nearness or remoteness of the Defendant's conduct to the interference.*

It is Gerdts's contention that Donan's conduct of submitting a report re-writing the definition of hail damage that caused Hartford to continue to deny his claim. Donan's conduct is claimed to be a direct cause that would be near and not remote.

7. *The relations between the parties.*

Donan contends it did not have a direct relationship with Gerdts. Donan argues that it was retained by Hartford to conduct an inspection and submit a report. Except for contact during the inspection of the roof, Donan and LeTellier were not directly engaged with Gerdts. Gerdts claimed that he was a third-party beneficiary to the agreement between Donan and Hartford for the inspection and report. The district court decided this claim against Gerdts and, as discussed below, we agree with the district court that Gerdts was not a third-party beneficiary.

After analyzing the seven factors in Restatement Torts (Second) section 767 as set out in *Green*, we are satisfied that Donan's acts were not for the primary

purpose of interfering with the performance of the insurance contract and may be regarded as such a minor and incidental consequence and so far removed from Donan's objective that as against Gerdts we find no genuine issues of fact material to improper interference.

We determine that the district court should have granted Donan's motion for summary judgment based upon application of the seven factors and that, under that test, Gerdts failed to establish a genuine issue of material fact that Donan's conduct was improper. Donan is entitled to summary judgment as a matter of law. We therefore affirm the grant of summary judgment, not based upon the district court's reasoning, but for the reason arrived at in this opinion.

### C. Breach of contract as a third-party beneficiary

Finally, Gerdts contends the district court erred in holding Gerdts was not a third-party beneficiary of the contract between Donan and Hartford and granting summary judgment on his breach-of-contract claim. To prevail in this claim, Gerdts had to show the following:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 319 (Iowa 2006) (quoting Restatement (Second) of Contracts § 302 (1981)). The district court, avoiding the direct question, found:

> even supposing that Plaintiff is a Third-Party Beneficiary of the contract between the Donan Defendants and Hartford, Plaintiff must still demonstrate that there is a promise of performance that one of the parties to the contract failed to honor. Here, Plaintiff's Third-Party Beneficiary claim relies on the assertion that LeTellier should have "found damage to the home, as all objective evidence points." Plaintiff's claim relies on the indispensable assumption that LeTellier's engineering report was flawed. This is substantially the same claim as with Plaintiff's claim for intentional interference, and Plaintiff's failure to designate an engineering expert to opine about the quality of the Donan Defendants' Report is likewise fatal in this regard. The Court dismisses Article II, Count V of Plaintiff's Petition, Breach of Contract, Third Party Beneficiary.

(Citations omitted.) In other words, the district court found that an underlying assumption of Gerdts's claim is that he is meant to obtain a benefit from the contract between Donan and Hartford. Indeed, "[t]he primary question in a third-party beneficiary case is whether the contract manifests an intent to benefit a third party." *Id.* at 319–20. Gerdts did not produce and we see no evidence of a written contract between Hartford and Donan other than the "scope of work" assignment to Donan to "[i]nspect roof for cause of damage. Include test squares on each slope and advice on reparability vs replacement." The instruction to provide "advice on repairability vs replacement" does not manifest any intent to benefit Gerdts as a third party. At best, Hartford contracted with Donan for an accurate report of professional advice on the damage to Gerdts's roof. There is no prescription in the instruction to make any particular finding—either in favor of Gerdts or Hartford. Again, Gerdts asserts his appearance on the communications between Hartford and Donan name him and his home as beneficiaries, but he has not produced sufficient evidence to generate a jury question that he was meant to

benefit. As a matter of law, Gerdts cannot prove that he was an intended beneficiary, so he cannot prove his breach-of-contract claim.[15]

### IV. Conclusion

We affirm the district court's dismissal of the negligence claim and grant of summary judgment and dismissal of the third-party-beneficiary claims. We also affirm the grant of summary judgment and dismissal of the tortious-interference-with-contract claim for the reason discussed in this opinion and not for the reason determined by the district court.

**AFFIRMED.**

Badding, J., concurs; Tabor, P.J., partially dissents.

---

[15] The district court again resolved this claim by finding Gerdts would need expert testimony. We find we can resolve the claim as a matter of law on this alternative ground urged below.

**TABOR, Presiding Judge** (concurring in part and dissenting in part).

This case is about common sense. A severe hailstorm pummeled Bettendorf in April 2020. Many of Richard Gerdts's neighbors, including his duplex neighbor who shared the same roof, received insurance payouts to fix their damaged shingles. But not Gerdts. The Property and Casualty Insurance Company of Hartford denied his claim because Donan Engineering said he did not have hail damage. Donan engineer Lance LeTellier gave that opinion without checking for a definition of hail damage in the insurance policy. In fact, LeTellier testified that he did not care what the policy said. To avoid summary judgment on his claim of tortious interference with contract, Gerdts presented evidence that Donan relied on its restrictive definition of hail damage in numerous reports commissioned by an insurer deciding whether to deny coverage to Iowa homeowners. Did that pattern reveal a motive to find no damage—fueled by a desire to secure future business with insurance companies? Using their common sense, jurors could say yes. Did Donan intentionally and improperly interfere with Gerdts's contract with Hartford? I think a jury should decide. Thus, I respectfully dissent in part.

First, a few points of consensus. The majority finds that the district court erred in resting its summary-judgment ruling on Gerdts's lack of an expert witness without analyzing the other factors cited in *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006). I agree that an expert witness was not required to prove Donan's improper conduct. I also agree that we can consider other grounds raised in the district court and argued on appeal to decide if summary judgment was proper. *Pitts v. Farm Bureau Life Ins. Co.*, 818

N.W.2d 91, 97 (Iowa 2012). But I disagree with the majority's assessment of the evidence of Donan's motive under the *Green* factors.

Like the district court, the majority faults Gerdts for not having an expert to establish that Donan did not follow "business standards and ethical duties of engineers." The majority also rejects Gerdts's claim that Donan "in effect" rewrote the insurance policy post-loss by changing the definition of hail damage. In the majority's view, nothing devious occurred because Donan was unaware of the policy definition of loss.

I disagree that these details prevent Gerdts from showing that Donan improperly interfered with his insurance contract. A jury could reasonably infer that Donan's head-in-the-sand approach to its inspection and report signaled improper interference. In the summary-judgment proceedings, Donan engineer LeTellier acknowledged that he did not make an "apple to apple" comparison of the damage standard in his report to any definition of loss in the insurance policy. When, as here, an inspector does not bother to find out how the insurance contract defined loss, it would not take an expert to determine that the engineer was not following accepted business practices. *Cf. Est. of Butterfield by Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 841 (Iowa 2023) (discussing circumstances in which expert testimony is not required). "The real question is whether the actor's conduct was fair and reasonable under the circumstances." *Toney v. Casey's General Stores, Inc.*, 460 N.W.2d 849, 852 (Iowa 1990) (quoting Restatement (Second) of Torts § 767 cmt. j). Donan knew it was hired to assess Gerdts's insurance claim. Using its own narrow definition of hail damage, Donan reported to The Hartford that Gerdts's roof was not damaged. But Donan was blissfully

ignorant whether the insurer used the same definition in its contract with Gerdts. Jurors could use their common sense to decide if such conduct was fair and reasonable. On this record, Gerdts generated a question of material fact whether Donan wrongfully interfered with the insurance contract.

The majority also dismisses Gerdts's evidence that Donan engineers used the same definition of hail damage when issuing more than two dozen reports for one insurer over the course of two years in eight Iowa counties. In the majority's view, that evidence did not show an improper motive on Donan's part. True, those reports—standing alone—may not prove an improper motive. But they do shed light on Donan's interest in securing future business by delivering reports favorable to the insurance company's bottom line. *See generally Meadows of Bloomfield Assn. v. State Farm Fire and Cas. Co*., No. A22-1775, 2023 WL 5012219, at *1 (Minn. Ct. App. Aug. 7, 2023) ("After receiving Meadows' storm claim, State Farm hired Donan Engineering to inspect the damage. Donan Engineering concluded that hail had damaged the soft metals on the roofs but did not damage the shingles.").

Summary judgment is inappropriate if reasonable minds could disagree about how issues of fact should be resolved. *Pitts*, 818 N.W.2d at 106. Unlike the plaintiffs in *Green*, Gerdts offered evidence to show Donan's motive for finding no hail damage. *See* 713 N.W.2d 234, 245 (Iowa 2006) (affirming summary judgment when nonmoving party failed to "identify specific facts that reveal the alleged underlying motive"). Viewing the summary judgment record in the light most favorable to Gerdts, I would reverse and remand for a trial on the tortious-interference claim.

I concur with the majority opinion on the remaining issues. That said, this case also presents a good opportunity for the supreme court to clarify whether engineering negligence is exempt from the economic loss rule. *See Van Sickle Const. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 692 n. 5 (Iowa 2010) (noting "purely economic losses are recoverable in actions asserting claims of professional negligence against attorneys and accountants").